131 Cal.Rptr.2d 885 (2003)
107 Cal.App.4th 454
Jerold Daniel FRIEDMAN, Plaintiff and Appellant,
v.
MERCK & CO., Inc. et al. Defendants and Respondents.
No. B155272.
Court of Appeal, Second District, Division Five.
March 26, 2003.
Review Denied June 11, 2003.[*]
Certiorari Denied May 19, 2003.
*888 Myer Law Firm and Scott D. Myer, Los Angeles, for Plaintiff and Appellant.
Drinker Biddle & Reath, Charles F. Preuss, Alan J. Lazarus, San Francisco, and Jonathan M. Rolbin for Defendants and Respondents.
Certiorari Denied May 19, 2003. See 123 S.Ct. 2078.
TURNER, P.J.

I. INTRODUCTION
Plaintiff, Jerold Daniel Friedman, appeals from a judgment, following the sustaining of demurrers without leave to amend, in favor of defendants, Merck & Co., Inc., Merck Ventures, Inc., Astra Merck, Inc., and Merck Hamilton, Inc. Plaintiff, a strict ethical vegan, alleged he suffered serious emotional, and subsequent physical, injuries when he discovered a tuberculosis (TB) test he had submitted to contained animal products. He further alleged defendants, the distributors of the TB test, negligently misrepresented, upon inquiry, that the test did not contain animal products and was "Vegan `safe'" and "Vegan `friendly.'" We conclude plaintiff has not stated a cause of action for: negligence; negligent infliction of emotional distress; or negligent misrepresentation. Accordingly, we affirm the judgment.

II. BACKGROUND

A. The Second and Third Amended Complaints' Allegations
Plaintiff alleged: he is a strict ethical vegan; he fervently believes it is immoral and unethical to kill or exploit animals for any purpose; and "[h]e lives each aspect of his life" accordingly. He applied for a position with Southern California Permanente Medical Group. He was required, as a condition of the offered employment, to undergo a TB test. Plaintiff spoke with an employee of Southern California Permanente Medical Group. Plaintiff said that he was an ethical vegan who could not submit to the test if it resulted from the use of animal products or testing. An employee of Southern California Permanente Medical Group then in turn inquired of defendants as to whether there were animal products in the TB test. Defendants in turn advised the Southern California Permanente Medical Group employee that the TB test was "Vegan `safe'" and "Vegan `friendly.'" The Southern California Permanente Medical Group employee then repeated defendants' representations to plaintiff.
*889 In his negligence cause of action, plaintiff asserted defendants negligently advised the Southern California Permanente Medical Group employee the TB test was "Vegan `safe'" and "Vegan `friendly.'" In fact, the TB test contained animal products. Plaintiff alleged: defendants should have known the TB test was not "Vegan 'safe'" and "Vegan `friendly'"; he submitted to the TB test in reliance on defendants' assurances; and he subsequently learned the TB test involved injecting him with bovine (cow) serum. As a result, it was alleged, "[Plaintiff sustained] injuries, including, but not limited to, injuries to his body, physical health, strength and activity and shock and injuries to his nervous system, and has also suffered and continues to suffer severe physical and mental pain and anguish in connection therewith, all of which have caused and continue to cause [him] great mental, physical, spiritual, emotional and nervous pain and suffering."
In his negligent infliction of emotional distress cause of action, plaintiff alleged: "Defendants breached their duties . . . to provide him with a screening test that only had the ingredients represented by the [defendants and . . . to advise [him, his employer, or his doctors] with a correct listing of the ingredients of same. The list of ingredients that the [defendants . . . provided . . ., knowing the list would be passed along . . . to the [p]laintiff and other [v]egans, was incorrect and incomplete." Plaintiff further alleged defendants knew or should have known their conduct would cause him to suffer extreme emotional distress. Plaintiff alleged, "As a proximate result of [defendants' negligent conduct, [p]laintiff suffered and will continue to suffer extreme humiliation, embarrassment, mental anguish and emotional distress in an amount according to proof."

B. The Ruling On The Demurrer
The trial court found defendants owed no duty to plaintiff. Accordingly, it sustained defendants' demurrers to both the negligence and negligent infliction of emotional distress causes of action. The trial court sustained without leave to amend defendants' demurrers to the sixth cause of action of the second amended complaint for negligence and the ninth cause of action of the third amended complaint for negligent infliction of emotional distress. The trial court entered a judgment in defendants' favor.

C. Other Defendants
There were two defendants named in the amended complaints who are not mentioned in the foregoing facts. One defendant, Aventis Pasteur Inc., has settled with plaintiff. As to the remaining defendant, Southern California Permanente Medical Group, we affirmed the demurrer dismissal of plaintiffs Fair Employment and Housing Act cause of action in Friedman v. Southern Cal. Permanente Medical Group (2002) 102 Cal.App.4th 39, 43, 69-70, 125 Cal.Rptr.2d 663.

III. DISCUSSION

A. Standard of Review
Our Supreme Court has set forth the standard of review we must apply as follows: "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed `if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of *890 action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 966-967, 9 Cal.Rptr.2d 92, 831 P.2d 317; accord, Zelig v. County of Los Angeles (2002) 27 Cal.4th 1112, 1126, 119 Cal. Rptr.2d 709, 45 P.3d 1171.)

B. Duty
Plaintiff contends he has stated causes of action for negligence and negligent infliction of emotional distress. The elements of a cause of action for negligence are: duty; breach of duty; legal cause; and damages. (Paz v. State of California (2000) 22 Cal.4th 550, 559, 93 Cal.Rptr.2d 703, 994 P.2d 975; Sharon P. v. Annan, Ltd. (1999) 21 Cal.4th 1181, 1188, 91 Cal.Rptr.2d 35, 989 P.2d 121, disapproved on another point in Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 853, fn. 19, 107 Cal.Rptr.2d 841, 24 P.3d 493; Artiglio v. Corning Inc. (1998) 18 Cal.4th 604, 614, 76 Cal.Rptr.2d 479, 957 P.2d 1313.) The existence of a duty is the threshold element of a negligence cause of action. (Paz v. State of California, supra, 22 Cal.4th at p. 559, 93 Cal. Rptr.2d 703, 994 P.2d 975; Artiglio v. Corning Inc., supra, 18 Cal.4th at p. 614, 76 Cal.Rptr.2d 479, 957 P.2d 1313.) The Supreme Court has held, "`"The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. [Citations.]"'" (Paz v. State of California, supra, 22 Cal.4th at p. 559, 93 Cal.Rptr.2d 703, 994 P.2d 975; see Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co. (2002) 27 Cal.4th 705, 715, 117 Cal.Rptr.2d 541, 41 P.3d 548.)
Duty is also an element of a negligent emotional distress infliction cause of action. (Burgess v. Superior Court (1992) 2 Cal.4th 1064, 1072, 9 Cal.Rptr.2d 615, 831 P.2d 1197; Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc. (1989) 48 Cal.3d 583, 588, 257 Cal.Rptr. 98, 770 P.2d 278.) The cause of action is not, in general, well-defined. However, it is well-settled that negligent emotional distress infliction is not an independent tort; rather it is the tort of negligence to which the duty element applies. (Burgess v. Superior Court, supra, 2 Cal.4th at p. 1072, 9 Cal.Rptr.2d 615, 831 P.2d 1197; Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., supra, 48 Cal.3d at p. 588, 257 Cal.Rptr. 98, 770 P.2d 278.) Moreover, as the Supreme Court has held, "[T]here is no duty to avoid negligently causing emotional distress to another." (Potter v. Firestone Tire & Rubber Co. (1993) 6 Cal.4th 965, 984, 25 Cal.Rptr.2d 550, 863 P.2d 795, italics added; Boyles v. Kerr (Tex.1993) 855 S.W.2d 593, 594.) As the Supreme Court explained in Potter, "[D]amages for emotional distress are recoverable only if the defendant has breached some other duty to the plaintiff." (Potter v. Firestone Tire & Rubber Co., supra, 6 Cal.4th at p. 984, 25 Cal.Rptr.2d 550, 863 P.2d 795, italics added.) The independent duty may be imposed by law, assumed by the defendant, or exist by virtue of a special relationship between the parties. (Id. at pp. 984-985, 25 Cal.Rptr.2d 550, 863 P.2d 795; Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., supra, 48 Cal.3d at p. 590, 257 Cal.Rptr. 98, 770 P.2d 278; see Flahavan, et al, Cal. Practice Guide: Personal Injury (The Rutter Group 2002) Evaluation of Damages, ¶ 3:217.) Plaintiff does not contend a duty arose because of any special relationship between the parties. Therefore, we turn to the questions of whether defendants breached a duty imposed by law or assumed by them. *891 Whether a duty exists is a question of law. (Sharon P. v. Arman, Ltd., supra, 21 Cal.4th at p. 1188, 91 Cal.Rptr.2d 35, 989 P.2d 121; Parsons v. Crown Disposal Co. (1997) 15 Cal.4th 456, 465, 63 Cal.Rptr.2d 291, 936 P.2d 70.)

1. Did defendants breach a duty imposed on them as a matter of law?
A court determines whether a duty is imposed by law as a matter of policy. The Supreme Court has explained: "`To say that someone owes another a duty of care "`is a shorthand statement of a conclusion, rather than an aid to analysis in itself. . . . "[D]uty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' [Citation.]" [Citation.] "[L]egal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." [Citation.]' (Hoff v. Vacaville Unified School Dist. (1998) 19 Cal.4th 925, 933, [80 Cal.Rptr.2d 811, 968 P.2d 522][ ].)" (Paz v. State of California, supra, 22 Cal.4th at p. 559, 93 Cal.Rptr.2d 703, 994 P.2d 975; see Parsons v. Crown Disposal Co., supra, 15 Cal.4th at p. 472, 63 Cal. Rptr.2d 291, 936 P.2d 70.)
The policy considerations to be taken into account in determining whether a duty is imposed by law were set forth in Rowland v. Christian (1968) 69 Cal.2d 108, 112-113, 70 Cal.Rptr. 97, 443 P.2d 561, and recently reiterated in Randi W. v. Muroc Joint Unified School Dist. (1997) 14 Cal.4th 1066, 1077, 60 Cal.Rptr.2d 263, 929 P.2d 582: "In this state, the general rule is that all persons have a duty to use ordinary care to prevent others from being injured as the result of their conduct. (Rowland v. Christian [, supra,] 69 Cal.2d [at p.] 112, [70 Cal.Rptr. 97, 443 P.2d 561][ ]; see Civ.Code, § 1714.) As we have observed, `Rowland enumerates a number of considerations . . . that have been taken into account by courts in various contexts to determine whether a departure from the general rule is appropriate: "the major [considerations] are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (Italics added.) (69 Cal.2d at p. 113, 70 Cal.Rptr. 97, 443 P.2d 561.) The foreseeability of a particular kind of harm plays a very significant role in this calculus [citation], but a court's task  in determining "`duty"  is not to decide whether a particular plaintiffs injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.' (Ballard v. Uribe (1986) 41 Cal.3d 564, 572-573, fn. 6, [224 Cal.Rptr. 664, 715 P.2d 624][ ].)" (Accord, e.g., Arreola v. County of Monterey (2002) 99 Cal.App.4th 722, 755, 122 Cal.Rptr.2d 38; Martinez v. Bank of America (2000) 82 Cal.App.4th 883, 895, 98 Cal.Rptr.2d 576; Wright v. City of Los Angeles (1990) 219 Cal.App.3d 318, 345, 268 Cal.Rptr. 309.)
As the Supreme Court stated in Randi W. v. Muroc Joint Unified School Dist, supra, 14 Cal.4th at page 1077, 60 Cal.Rptr.2d 263, 929 P.2d 582, foreseeability of harm is an important consideration *892 in determining whether a duty is owed as a matter of law. (Ann M. v. Pacific Plaza Shopping Center (1993) 6 Cal.4th 666, 676, 25 Cal.Rptr.2d 137, 863 P.2d 207; Ess v. Eskaton Properties, Inc. (2002) 97 Cal. App.4th 120, 126, 118 Cal.Rptr.2d 240; Wright v. City of Los Angeles, supra, 219 Cal.App.3d at p. 345, 268 Cal.Rptr. 309.) To support a duty, foreseeability of harm must be reasonable. (Ma v. City and County of San Francisco (2002) 95 Cal. App.4th 488, 504, 115 Cal.Rptr.2d 544; Sturgeon v. Curnutt (1994) 29 Cal.App.4th 301, 306, 34 Cal.Rptr.2d 498.) Put another way, the degree of foreseeability must be high enough to charge the defendant with a duty to act. (Juarez v. Boy Scouts of America, Inc. (2000) 81 Cal.App.4th 377, 402, 97 Cal.Rptr.2d 12; Ma v. City and County of San Francisco, supra, 95 Cal. App.4th at pp. 504-505, 115 Cal.Rptr.2d 544; Wawanesa Mut. Ins. Co. v. Matlock (1997) 60 Cal.App.4th 583, 588, 70 Cal. Rptr.2d 512.) In Matlock, the Court of Appeal stated the harm must be sufficiently likely to arise from a given act. (Wawanesa Mut. Ins. Co. v. Matlock, supra, 60 Cal.App.4th at p. 588, 70 Cal.Rptr.2d 512; see Jefferson v. Qwik Korner Market, Inc. (1994) 28 Cal.App.4th 990, 996, 34 Cal. Rptr.2d 171.) More than a mere possibility of occurrence is required since, with hindsight, everything is foreseeable. (Nicole M. v. Sears, Roebuck & Co. (1999) 76 Cal.App.4th 1238, 1245, 90 Cal.Rptr.2d 922, citing Hegyes v. Unjian Enterprises, Inc. (1991) 234 Cal.App.3d 1103, 1133, 286 Cal.Rptr. 85.) Our colleague Associate Justice Patti S. Kitching has explained: "[T]he court evaluates . . . whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party. (Ballard v. Uribe [, supra,] 41 Cal.3d [at pp.] 572-573, fn. 6, [224 Cal.Rptr. 664, 715 P.2d 624][].) What is `sufficiently likely' means what is "`likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.'" (Bigbee v. Pacific Tel. & Tel. Co. (1983) 34 Cal.3d 49, 57, [192 Cal.Rptr. 857, 665 P.2d 947][ ].)" (Martinez v. Bank of America, supra, 82 Cal.App.4th at p. 895, 98 Cal. Rptr.2d 576.)
We turn to the question whether defendants owed a duty to plaintiff as a matter of law. It is significant that the TB test was a safe and useful product and, further, that plaintiffs injury arose because of his particular sincerely held beliefs as a strict ethical vegan. We find there is no allegation or assertion that the class of strict ethical vegans or others with similar conscientiously held sensibilities who would suffer serious harm upon submitting to a TB test containing animal products is sufficiently appreciable or substantial so as to permit the imposition of tort liability under these circumstances. We conclude, as discussed below, that the foreseeability of any serious harm to a sufficiently appreciable segment of the general public is too remote to justify the imposition of a duty to warn on the defendants.
There is significant authority to the effect that there is no duty to warn of the possibility of rare, idiosyncratic, hypersensitive, or unusual reactions to an otherwise safe and useful product.[1] (Briggs v. National Industries, Inc. (1949) 92 Cal.App.2d 542, 545-546, 207 P.2d 110; accord, Adelman-Tremblay v. Jewel Companies, Inc. (7th Cir.1988) 859 F.2d 517, 521-522; Grau v. Procter & Gamble Co. *893 (5th Cir.1963) 324 F.2d 309, 310; Bish v. Employers Liability Assur. Corp. (5th Cir. 1956) 236 F.2d 62, 69; Merrill v. Beaute Vues Corp. (10th Cir. 1956) 235 F.2d 893, 897-898; Mountain v. Procter & Gamble Co. (E.D.Wis.1970) 312 F.Supp. 534, 536-537; Johnston v. J.C. Ehrlich Co. Inc. (Pa.Com.Pl.1991) 14 Pa. D. & C.4th 4, 10-11; Griggs v. Combe, Inc. (Ala.1984) 456 So.2d 790, 791-792; Presbrey v. Gillette Co. (1982) 105 Ill.App.3d 1082, 61 Ill.Dec. 816, 435 N.E.2d 513, 519-522; Thomas v. Gillette Co. (La.App.1970) 230 So.2d 870, 873, 874-875; Kaempfe v. Lehn & Fink Products Corp. (N.Y.1967) 20 N.Y.2d 818, 818-820, 284 N.Y.S.2d 708, 231 N.E.2d 294; Vanoven v. Hardin (1961) 233 Ark. 301, 344 S.W.2d 340, 343; Bonowski v. Revlon, Inc. (Iowa 1959) 251 Iowa 141, 100 N.W.2d 5, 7-9; Bennett v. Pilot Products Co. (1951) 120 Utah 474, 235 P.2d 525, 526-528; Rest.2d Torts, § 402A, com. j; 63A Am.Jur.2d (2002) Products Liability, § 1152; 72S C.J.S. (2002) Products Liability, § 26.) Stated differently, a defendant is not liable for negligence or for negligently failing to warn when a plaintiffs own idiosyncratic, hypersensitive, or unusual reaction to a product is the legal cause of his or her injury. (Briggs v. National Industries, Inc., supra, 92 Cal. App.2d at pp. 545-546, 207 P.2d 110; see Zager v. F.W. Woolworth Co. (1939) 30 Cal.App.2d 324, 332-333, 86 P.2d 389; accord, Adelman-Tremblay v. Jewel Companies, Inc., supra, 859 F.2d at p. 522; Bish v. Employers Liability Assur. Corp., supra, 236 F.2d at p. 69; Merrill v. Beaute Vues Corp., supra, 235 F.2d at pp. 897-898; Mountain v. Procter & Gamble Co., supra, 312 F.Supp. at pp. 536-537; Johnston v. J.C. Ehrlich Co. Inc., supra, 14 Pa. D. & C.4th at pp. 10-11; Griggs v. Combe. Inc., supra, 456 So.2d at pp. 791-792; Presbrey v. Gillette Co., supra, 61 Ill.Dec. 816, 435 N.E.2d at pp. 519-522; Thomas v. Gillette Co., supra, 230 So.2d at pp. 873, 874-875; Kaempfe v. Lehn & Fink Products Corp., supra, 20 N.Y.2d at pp. 818-820, 284 N.Y.S.2d 708, 231 N.E.2d 294; Vanoven v. Hardin, supra, 344 S.W.2d at pp. 340-343; Bonowski v. Revlon, Inc., supra, 100 N.W.2d at pp. 7-9; Bennett v. Pilot Products Co., supra, 235 P.2d at pp. 527-528; 63A Am.Jur.2d, supra, Products Liability, § 1152.) In Briggs v. National Industries, Inc., supra, 92 Cal.App.2d at pages 545-546, 207 P.2d 110, the Court of Appeal considered whether the defendant manufacturer and distributor of a hair care solution could be held liable for negligently failing to warn the public that the product contained a potentially dangerous chemical. There was evidence only "a small percentage" of women developed irritations from the cold wave solution. (Id, at p. 544, 207 P.2d 110.) There was no evidence "that many persons were susceptible to the product and might suffer damage through its use." (Id. at p. 546, 207 P.2d 110.) The Court of Appeal held the evidence did not support a judgment in favor of the plaintiff on grounds the defendant "carelessly and negligently failed to warn the public or intended users of the product that it contained a chemical toxin . . . and that many persons were susceptible to and might suffer serious damage through its use. . ." (Id. at p. 545, 207 P.2d 110.)
The rule of law that a duty to warn arises only where a substantial number of the population are potentially affected is discussed in comment j to section 402A of the Restatement Second of Torts (comment j), discussing strict liability failure to warn. Comment j states: "In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an *894 ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger. Likewise in the case of poisonous drugs, or those unduly dangerous for other reasons, warning as to use may be required." (Italics added.) Comment j, although stated as an adjunct to strict liability failure to warn, reflects a hybrid of traditional strict liability and negligence doctrines. (Oakes v. E.I. Du Pont de Nemours & Co., Inc. (1969) 272 Cal.App.2d 645, 650, fn. 4, 77 Cal.Rptr. 709; see Carlin v. Superior Court (1996) 13 Cal.4th 1104, 1111-1112 & fn. 2, 56 Cal.Rptr.2d 162, 920 P.2d 1347; Brown v. Superior Court (1988) 44 Cal.3d 1049, 1059, fn. 4, 245 Cal.Rptr. 412, 751 P.2d 470; see also Carmichael v. Reitz (1971) 17 Cal.App.3d 958, 994, 95 Cal.Rptr. 381 ["the matters concerning allergies, hypersensitivities, and physical idiosyncrasies of the ultimate user, which raise many difficult problems [citation], should be treated as just another factor in the issues of `duty to warn, duty to know, and duty to test' [Citations]"].) The comment j imposition of a duty to warn only where it is known or knowable that a substantial number of the population are potentially affected has been applied in other jurisdictions in the context of negligent failure to warn. (Mountain v. Procter & Gamble Co., supra, 312 F.Supp. at pp. 536-537; Johnston v. J.C. Ehrlich Co. Inc., supra, 14 Pa. D. & C.4th at pp. 7-11; Griggs v. Combe, Inc., supra, 456 So.2d at pp. 791-792; Presbrey v. Gillette Co., supra, 61 Ill.Dec. 816, 435 N.E.2d at p. 520 ["The rule barring the idiosyncratic consumer from recovery generally applies whether suit is brought under strict liability, breach of warranty, or negligence"]; see Annot., Seller's or Manufacturer's Liability for Injuries as Affected by Buyer's or User's Allergy or Unusual Susceptibility to Injury from Article (1952) 26 A.L.R.2d 963, §§ 6-8, 1952 WL 7915.)
We conclude a TB test distributor's negligent failure to warn that the test contains animal products is not (and is not alleged to be) sufficiently likely to result in serious harm to a sufficiently significant segment of the population so as to impose a duty to so advise on defendants as a matter of law. Serious harm is not sufficiently likely to occur to a sufficiently significant number of persons such that imposition of a duty to warn on the distributor would serve public policy. In the absence of any allegation or assertion that a substantial number of the population are hypersensitive to medical tests containing animal products, public policy does not support the imposition of a duty to warn or advise. Plaintiffs injury arose because of his unusual reaction to an otherwise safe and useful product premised on his honestly held sense of values. We acknowledge that persons such as plaintiff will suffer distress upon finding they have ingested a test derived from animal products. But all we are holding is that in the absence of a legislative or regulatory enactment, the strict tort liability and negligence body of common law enforced by California courts does not give rise to liability under these specific circumstances. Stated differently, there is no duty to warn or advise under these circumstances. (Briggs v. National Industries, Inc., supra, 92 Cal.App.2d at pp. 545-546, 207 P.2d 110; accord, Adelman-Tremblay v. Jewel Companies, Inc., supra, 859 F.2d at pp. 521-522; Grau v. Procter & Gamble Co., supra, 324 F.2d at p. 310; Bish v. Employers Liability Assur. Corp., supra, 236 F.2d at p. 69; Merrill v. Beaute Vues Corp., supra, 235 F.2d at pp. *895 897-898; Mountain v. Procter & Gamble Co., supra, 312 F.Supp. at pp. 536-537; Johnston v. J.C. Ehrlich Co. Inc., supra, 14 Pa. D. & C.4th at pp. 10-11; Griggs v. Combe, Inc., supra, 456 So.2d at pp. 791-792; Presbrey v. Gillette Co., supra, 61 Ill.Dec. 816, 435 N.E.2d at pp. 519-522; Thomas v. Gillette Co., supra, 230 So.2d at pp. 873, 874-875; Kaempfe v. Lehn & Fink Products Corp., supra, 20 N.Y.2d at pp. 818-820, 284 N.Y.S.2d 708, 231 N.E.2d 294; Vanoven v. Hardin, supra, 344 S.W.2d at p. 343; Bonowski v. Revlon, Inc., supra, 100 N.W.2d at pp. 7-9; Bennett v. Pilot Products Co., supra, 235 P.2d at pp. 526-528; Rest.2d Torts, § 402A, com. j.; 63A Am.Jur.2d, supra, Products Liability, § 1152; 72S C.J.S, supra, Products Liability, § 26; Annot, Products Liability: Strict Liability in Tort Where Injury Results from Allergenic (Side-Effect) Reaction to Product (1973) 53 A.L.R.3d 298, § 2[b], 1973 WL 33998; see also Carmichael v. Reitz, supra, 17 Cal.App.3d at pp. 993-994, 95 Cal.Rptr. 381; Zager v. F.W. Woolworth Co., supra, 30 Cal.App.2d at pp. 332-333, 86 P.2d 389.) Therefore, we conclude as a matter of law defendants did not owe a general duty to advise consumers that the TB test contained animal products.
We emphasize that in reaching the foregoing conclusion we are not concerned with defendants' knowledge or lack of information concerning plaintiffs peculiar sensibilities. (See e.g., 38 Am.Jur.2d (1999) Fright, Shock, and Mental Disturbance, § 3.) The issue discussed above is not whether this particular plaintiffs injury was reasonably foreseeable in light of these particular defendants' conduct. In other words, we do not resolve the issue whether defendants, with knowledge of plaintiffs strict ethical veganism, reasonably should have anticipated that their negligence would put him at risk of serious emotional harm. Rather, the question we have resolved above is whether, in general, the type of negligent conduct at issue is sufficiently likely to result in the kind of harm plaintiff experienced. (Randi W. v. Muroc Joint Unified School Dist, supra, 14 Cal.4th at p. 1077, 60 Cal.Rptr.2d 263, 929 P.2d 582; Ballard v. Uribe, supra, 41 Cal.3d at pp. 572-573, fn. 6, 224 Cal.Rptr. 664, 715 P.2d 624.) This issue is close. In assessing this question concerning potential tort liability, we have of necessity candidly assessed the scope of defendants' duty to advise the Southern California Permanente Medical Group employee of the presence of cow serum in the TB test in light of plaintiffs sincerely held ethical beliefs. Nothing we have said should be read as diminishing the value of plaintiffs perspectives  in a pluralistic society they are to be respected.

2. Did defendants breach a duty assumed by them?

a. negligent infliction of emotional distress
We turn to the question whether defendants assumed a duty to plaintiff in which his emotional condition was an object. The Supreme Court has held that damages for emotional distress are recoverable when the defendant assumes a duty in which the emotional condition of the plaintiff is an object. (Erlich v. Menezes (1999) 21 Cal.4th 543, 555, 87 Cal.Rptr.2d 886, 981 P.2d 978; Potter v. Firestone Tire & Rubber Co., supra, 6 Cal.4th at pp. 984-985, 25 Cal.Rptr.2d 550, 863 P.2d 795.) However, foreseeability that serious emotional distress might result, without more, is not enough. (Huggins v. Longs Drug Stores California, Inc. (1993) 6 Cal.4th 124, 130, 24 Cal.Rptr.2d 587, 862 P.2d 148; Burgess v. Superior Court, supra, 2 Cal.4th at p. 1074, 9 Cal.Rptr.2d 615, 831 P.2d 1197; Thing v. La Chusa (1989) 48 Cal.3d 644, 663-664, 257 Cal.Rptr. 865, 771 P.2d 814; Marlene F. v. Affiliated Psychiatric *896 Medical Clinic, Inc., supra, 48 Cal.3d at pp. 589-590, 257 Cal.Rptr. 98, 770 P.2d 278; Flahavan, et al., Cal. Practice Guide: Personal Injury, supra, Evaluation of Damages, ¶ 3:217.1.)
We must reasonably interpret the amended complaints at issue. (Zelig v. County of Los Angeles, supra, 27 Cal.4th at p. 1126, 119 Cal.Rptr.2d 709, 45 P.3d 1171; Aubry v. Tri-City Hospital Dist, supra, 2 Cal.4th at pp. 966-967, 9 Cal.Rptr.2d 92, 831 P.2d 317.) Reasonably interpreted, plaintiffs pleadings alleged: defendants were asked whether the TB test was "Vegan `safe'" and "Vegan 'friendly'"; defendants knew the information would be provided to plaintiff, a vegan; defendants chose to provide the requested information; defendants misadvised that the test was "Vegan `safe'" and "Vegan `friendly'"; and defendants provided an incorrect and incomplete list of ingredients.
Our courts have found an assumed duty in a variety of situations. In Molien v. Kaiser Foundation Hospitals (1980) 27 Cal.3d 916, 919-920, 167 Cal.Rptr. 831, 616 P.2d 813, a doctor negligently misdiagnosed a woman as having contracted syphilis. The doctor further instructed the women to so advise her husband. The diagnosis was erroneous. The husband sued the doctor for negligent infliction of emotional distress. The Supreme Court held that, by directing the wife to inform her spouse of a diagnosis that foreseeably would disrupt their marital relationship, the doctor assumed a duty to the husband to convey accurate information. (Id. at p. 923, 167 Cal.Rptr. 831, 616 P.2d 813; see Huggins v. Longs Drug Stores California, Inc., supra, 6 Cal.4th at p. 130, 24 Cal. Rptr.2d 587, 862 P.2d 148; Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., supra, 48 Cal.3d at p. 590, 257 Cal.Rptr. 98, 770 P.2d 278.) The Molien court held: "[T]he risk of harm to [the husband] was reasonably foreseeable to the defendants. It is easily predictable that an erroneous diagnosis of syphilis and its probable source would produce marital discord and resultant emotional distress to a married patient's spouse; Dr. Kilbridge's advice to Mrs. Molien to have her husband examined for the disease confirms that plaintiff was a foreseeable victim of the negligent diagnosis. Because the disease is normally transmitted only by sexual relations, it is rational to anticipate that both husband and wife would experience anxiety, suspicion, and hostility when confronted with what they had every reason to believe was reliable medical evidence of a particularly noxious infidelity." (Molien v. Kaiser Foundation Hospitals, supra, 27 Cal.3d at p. 923, 167 Cal.Rptr. 831, 616 P.2d 813.) Further, the Supreme Court held, "Because the risk of harm to [the husband] was reasonably foreseeable we hold, in negligence parlance, that under these circumstances defendants owed plaintiff a duty to exercise due care in diagnosing the physical condition of his wife." (Ibid.) The Supreme Court has subsequently limited Molien to the extent it suggests that the existence of duty is governed only by the concept of foreseeability. In Burgess v. Superior Court, supra, 2 Cal.4th at page 1074, 9 Cal.Rptr.2d 615, 831 P.2d 1197, the Supreme Court held, "To the extent that Molien, supra, 27 Cal.3d 916, [167 Cal. Rptr. 831, 616 P.2d 813], stands for this proposition, it should not be relied upon and its discussion of duty is limited to its facts."
In Christensen v. Superior Court (1991) 54 Cal.3d 868, 876-880, 2 Cal.Rptr.2d 79, 820 P.2d 181, the decedents' relatives brought a class action against mortuaries and crematoria for mistreatment of the decedents' remains. The Supreme Court held, "Defendants here assumed a duty to the close relatives of the decedents for whose benefit they were to provide funeral *897 and/or related services." (Id. at pp. 890-891, 2 Cal.Rptr.2d 79, 820 P.2d 181.) In Christensen, the defendants did not dispute the foreseeability that mishandling human remains as alleged was likely to cause serious emotional distress to members of the decedent's immediate family. (Id. at p. 894, 2 Cal.Rptr.2d 79, 820 P.2d 181.) The Supreme Court impliedly found, then, that the duty assumed by the defendants encompassed the plaintiffs' emotional well-being.
In Huggins v. Longs Drug Stores California, Inc., supra, 6 Cal.4th at pages 129-133, 24 Cal.Rptr.2d 587, 862 P.2d 148, the Supreme Court considered whether a pharmacist who negligently filled a medication prescription for an infant was liable to the parents for emotional distress suffered as a result of injury to the child. The parents asserted causes of action for negligence and negligent infliction of emotional distress. (Id. at p. 127, 24 Cal. Rptr.2d 587, 862 P.2d 148.) The Supreme Court held a pharmacist's duties are to select, measure, and label prescribed medication in accordance with a doctor's orders, to alert the physician to errors or problems, and to advise patients concerning the drug. (Id. at p. 132, 24 Cal.Rptr.2d 587, 862 P.2d 148.) However, the court concluded, "Nothing in those duties imposes any legal responsibility upon pharmacists for the emotional well-being of the patient's parents. . . ." (Ibid.) Although the Supreme Court did not expressly refer to assumed duty, it is inferable that the court found no assumption by the pharmacist of a duty to the parents in which their emotional well-being was an object. (See Huggins v. Longs Drug Stores California, Inc., supra, 6 Cal.4th at pp. 135-139, 24 Cal. Rptr.2d 587, 862 P.2d 148 [dis. opn. of Kennard, J.].)
The existence of an assumed duty was also at issue in Gonzales v. Personal Storage, Inc. (1997) 56 Cal.App.4th 464, 474-475, 65 Cal.Rptr.2d 473. The plaintiff had stored valuable items in a storage space at a facility operated by the defendant. She alleged the defendant negligently allowed her property to be removed by a third party. The defendant argued its landlord-tenant relationship with the plaintiff did not give rise to any duty to protect her emotional tranquility or physical safety. The Court of Appeal agreed: "[W]e note that under the terms of the lease [plaintiff] signed, [defendant] repeatedly attempted to limit its liability for negligence and the trial court itself found nothing in the conversation [plaintiff] had with [defendant's] employees at the time the lease was signed gave rise to an undertaking by [defendant] to protect [plaintiff] from emotional distress. [Citation.] Moreover, we must also agree that [defendant's] duty to protect [the plaintiffs] property, whether limited by the terms of the lease or not, did not include a duty to protect [the plaintiff] from emotional distress or physical harm as required by Potter, supra, 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795." (Gonzales v. Personal Storage, Inc., supra, 56 Cal.App.4th at p. 474, 65 Cal.Rptr.2d 473, fn. omitted.) The court concluded, "Thus, were [the plaintiffs] claims solely for negligence, we would be inclined to agree with [defendant] that she cannot recover damages for her emotional distress." (Id. at pp. 474-475, 65 Cal.Rptr.2d 473.)
Legal malpractice actions offer another example of a duty that does not encompass emotional tranquility. The Courts of Appeal have held, outside the criminal defense context, that an attorney's duty to his or her client generally is to protect economic interests. (E.g., Pleasant v. Celli (1993) 18 Cal.App.4th 841, 853-854, 22 Cal.Rptr.2d 663, disapproved on another point in Adams v. Paul (1995) 11 Cal.4th 583, 591, fn. 4, 46 Cal. *898 Rptr.2d 594, 904 P.2d 1205; Smith v. Superior Court (1992) 10 Cal.App.4th 1033, 1038-1039, 13 Cal.Rptr.2d 133; Merenda v. Superior Court (1992) 3 Cal.App.4th 1, 10-11, 4 Cal.Rptr.2d 87.) It may be foreseeable that a client who is the victim of legal malpractice will suffer emotional distress. But the lawyer's obligation to the client, at least absent knowledge of any unusual susceptibility, is economic; the lawyer does not assume an obligation to protect the client's emotional state. (Pleasant v. Celli, supra, 18 Cal.App.4th at pp. 853-854, 22 Cal.Rptr.2d 663; Smith v. Superior Court, supra, 10 Cal.App.4th at pp. 1038-1039, 13 Cal.Rptr.2d 133; Merenda v. Superior Court, supra, 3 Cal. App.4th at pp. 10-11, 4 Cal.Rptr.2d 87.) Thus, the Court of Appeal observed in Gonzales v. Personal Storage, Inc., supra, 56 Cal.App.4th at page 474, 65 Cal.Rptr.2d 473, "[C]ourts have refused to permit the victims of attorney malpractice to recover emotional distress damages (Smith v. Superior Court [, supra,] 10 Cal.App.4th [at p.] 1039, [13 Cal.Rptr.2d 133][ ]; Merenda v. Superior Court, supra, 3 Cal.App.4th at pp. 9-11, [4 Cal.Rptr.2d 87][]), except where the attorney was retained to prevent the plaintiff from being incarcerated. (Holliday v. Jones (1989) 215 Cal.App.3d 102, 114-115, [264 Cal.Rptr. 448][ ].)"
In Holliday v. Jones, supra, 215 Cal. App.3d at pages 104-105, 264 Cal.Rptr. 448, the plaintiffs involuntary manslaughter conviction was reversed solely because of attorney incompetence. On retrial, the plaintiff was acquitted. In the ensuing malpractice action, the plaintiff recovered a judgment against the former criminal defense attorney. The judgment included emotional distress damages. (Id. at p. 105, 264 Cal.Rptr. 448.) On appeal, the defendant attorney argued in part that the plaintiffs emotional distress damages could not be premised on attorney malpractice. (Ibid) The Court of Appeal disagreed and held: "Here, in Holliday's criminal trial, a . . . fundamental and personal right  Holliday's liberty  was at stake. In such circumstances, emotional distress damages necessarily result from the loss of that liberty due to no other reason than lawyer malpractice." (Id. at p. 115, 264 Cal.Rptr. 448.) The criminal defense attorney's representation of the accused in Holliday involved more than economic or property interests; it encompassed the plaintiffs liberty interest. The Court of Appeal held the emotional impact from the plaintiffs loss of liberty was a reasonable and foreseeable consequence of the attorney's professional incompetence. (Id. at p. 117, 264 Cal.Rptr. 448.)
The decisional authority does not provide any bright line guidance as to the meaning of an assumed duty in which the plaintiffs emotional condition is an object. However, one treatise provides some clarity. In The Law of Torts, the author notes that in Burgess v. Superior Court, supra, 2 Cal.4th at pages 1069, 1071-1085, 9 Cal. Rptr.2d 615, 831 P.2d 1197, the Supreme Court held a physician owed an assumed or independent duty to a mother whose child suffered severe brain damage during birth. (Dobbs, The Law of Torts (West Group 2001) Vol. 2, § 312, pp. 848-849.) The treatise, authored by University of Arizona Professor of Law Dan B. Dobbs, goes on to state: "Although the childbirth setting is perhaps the most prominent example of the independent duty, the same reasoning can be applied whenever the defendant assumes to duty by contract or otherwise and when that duty encompasses the plaintiffs emotional well-being. A therapist who agrees to treat the plaintiff is assuming a duty to exercise care for the plaintiffs emotional condition; if he instead negligently inflicts emotional harm, he is responsible. The mortuary contracting to provide appropriate embalming and burial seems to be an obvious example. If the mortuary's work is negligent *899 and it provides a body in ruinous condition for an open casket service, the case for emotional harm damages to the survivors exactly fits the assumed or independent duty analysis. The duty assumed by the mortuary expressly or impliedly was a duty to take care for the feelings of the survivors and the class of persons who could claim such a duty is limited to those for whom the contract was made. Consequently, it is no surprise to see that California has entertained a claim for emotional distress by survivors when bodies were mishandled by mortuaries. [ (Christensen v. Superior Court, supra, 54 Cal.3d 868, [2 Cal.Rptr.2d 79, 820 P.2d 181].)]. . . . [¶] . . . The nature and scope of the duty assumed or imposed by law because of the relationship is a matter for the court to decide." (Dobbs, The Law of Torts, supra, § 312, pp. 849-850, fns. omitted.)
The Supreme Court has identified similar concerns in a case involving emotional distress damages sought on a negligent contract breach theory. The contract at issue in Erlich v. Menezes, supra, 21 Cal.4th at page 548, 87 Cal.Rptr.2d 886, 981 P.2d 978, was for construction of a residence. The Supreme Court considered, among other things, whether emotional distress damages should be included as consequential or special damages for a contract breach. (Id. at p. 558, 87 Cal. Rptr.2d 886, 981 P.2d 978.) In Erlich, the Supreme Court, relying in part on the Restatement Second of Contracts held: "`Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.' (Rest.2d Contracts, § 353.)" (Erlich v. Menezes, supra, 21 Cal.4th at pp. 558-559, 87 Cal.Rptr.2d 886, 981 P.2d 978; accord Dunkin v. Boskey (2000) 82 Cal. App.4th 171, 193, 98 Cal.Rptr.2d 44.) The court further noted: "Cases permitting recovery for emotional distress typically involve mental anguish stemming from more personal undertakings the traumatic results of which were unavoidable. [Citations.] [¶] Cases from other jurisdictions have formulated a similar rule, barring recovery of emotional distress damages for breach of contract except in eases involving contracts in which emotional concerns are the essence of the contract. [Citations.]" (Erlich v. Menezes, supra, 21 Cal.4th at p. 559, 87 Cal.Rptr.2d 886, 981 P.2d 978.)
In the present case, even if, as alleged, defendants, the distributors of the TB test, knew plaintiff was a strict ethical vegan, it was not reasonably foreseeable that their negligence in responding to the prospective employer's inquiry would likely cause plaintiff to suffer serious emotional distress. Plaintiff alleges the defendants knew that the inquiry was being made on behalf of a prospective employee who, as a vegan, would not submit to a TB test containing animal products. It was reasonably foreseeable, under these circumstances, that plaintiff would be upset upon subsequently learning the TB test did in fact contain cow serum. However, it was not reasonably foreseeable plaintiff would suffer serious emotional harm. There is no allegation defendants knew who plaintiff was or the strength of his ethical beliefs. Moreover, unlike the doctor in Molien on which plaintiff relies, defendants did not assume a duty in which plaintiffs emotional condition was an object. At best, from plaintiffs perspective, defendants assumed a legal duty to exercise reasonable care to provide accurate information. Defendants' obligation to plaintiff ended there. Defendants' undertaking was not of a personal nature involving an unavoidable risk of serious emotional trauma. Defendants did not voluntarily undertake any duty that encompassed plaintiffs emotional tranquility. A corporation *900 responding to an inquiry as to the contents of its product is materially unlike a physician undertaking to deliver a child, a therapist agreeing to treat a patient, a mortuary contracting to provide burial services, or a doctor telling a patient to advise her husband that she has syphilis. The circumstances of this case do not support a conclusion the defendants, by voluntarily responding to the inquiry, assumed a duty to exercise care for plaintiffs emotional condition.

b. negligent misrepresentation
We agree with defendants' assertion that the cause of action labeled "negligence" more precisely alleges negligent misrepresentation. The language in the amended complaints in this case focuses on defendants' representations and plaintiffs reliance on them. (See Bily v. Arthur Young & Co. (1992) 3 Cal.4th 370, 413, 11 Cal.Rptr.2d 51, 834 P.2d 745; Garcia v. Superior Court (1990) 50 Cal.3d 728, 737, 268 Cal.Rptr. 779, 789 P.2d 960 [maj. opn.] 741-744 [cone. opn. of Lucas, C.J.].) In his brief on appeal, plaintiff asserted he had stated a general negligence claim. As discussed above, we conclude defendants had no general duty to advise the Southern California Permanente Medical Group employee that the TB test contained animal products. At oral argument, however, plaintiffs counsel argued that even if defendants had no general duty to advise that the TB test contained animal products, they had a legal responsibility, once they chose to respond to plaintiffs prospective employer's inquiry, to respond accurately. In other words, plaintiff asserts defendants assumed a duty to respond accurately; further, defendants breached that duty in that they negligently misrepresented the TB test contained no animal products when in fact it did.
The Supreme Court has held: "Negligent misrepresentation is a separate and distinct tort, a species of the tort of deceit. `Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.' (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 720 at p. 819; see also [Civ.Code,] § 1572, subd. 2[`[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true']; [Civ.Code,] § 1710, subd. 2[`[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true'].)" (Bily v. Arthur Young & Co., supra, 3 Cal.4th at pp. 407-408, 11 Cal.Rptr.2d 51, 834 P.2d 745.) The Court of Appeal has held: "The elements of a cause of action for negligent misrepresentation are: `1. The defendant must have made a representation as to a past or existing material fact[;] [¶] 2. The representation must have been untrue; [¶] 3. Regardless of his actual belief the defendant must have made the representation without any reasonable ground for believing it to be true; [¶] 4. The representation must have been made with the intent to induce plaintiff to rely upon it; [¶] 5. The plaintiff must have been unaware of the falsity of the representation; he must have acted in reliance upon the truth of the representation and he must have been justified in relying upon the representation. [¶] 6. And, finally, as a result of his reliance upon the truth of the representation, the plaintiff must have sustained damage.' (BAJI No. 12.45, . . .; see Walters v. Marler (1978) 83 Cal.App.3d 1, 17, [147 Cal.Rptr. 655][ ], overruled on another ground in Gray v. Don Miller & Associates, Inc. (1984) 35 Cal.3d 498, 505-507, [198 Cal.Rptr. 551, 674 P.2d 253][ ].)" (Continental Airlines, Inc. v. McDonnell Douglas Corp. (1989) 216 Cal.App.3d 388, 402, 264 Cal.Rptr. 779, italics omitted; accord, Home Budget *901 Loans, Inc. v. Jacoby & Meyers Law Offices (1989) 207 Cal.App.3d 1277, 1285, 255 Cal.Rptr. 483.)
With respect to the question who may rely on a representation, the Supreme Court has held, "[T]he person or `class of persons entitled to rely upon the representations is restricted to those to whom or for whom the misrepresentations were made. Even though the defendant should have anticipated that the misinformation might reach others, he is not liable to them.' (5 Witkin, Summary of Cal. Law, supra, Torts, § 721 at p. 820; Rest.2d Torts, § 552, corns, (g) and (h); Christiansen v. Roddy (1986) 186 Cal.App.3d 780, 785-787, [231 Cal.Rptr. 72][] [appraiser who negligently evaluated property for mortgage company not liable to investors in a loan secured by the property].)" (Bily v. Arthur Young & Co., supra, 3 Cal.4th at p. 408, 11 Cal.Rptr.2d 51, 834 P.2d 745; see Lincoln Alameda Creek v. Cooper Industries, Inc. (N.D.Cal.1992) 829 F.Supp. 325, 330.)
Here, plaintiff has alleged: defendants represented that the TB test did not contain animal products; the representation was untrue; defendants made the representation with the intent to induce plaintiff to rely on it; plaintiff, who was unaware of the falsity of the representation relied upon it; and as a result of that reliance, plaintiff sustained emotional and physical injury. It was further alleged that defendants knew or had reason to expect that the misrepresentation would be passed on to plaintiff and would influence his decision to submit to the TB test. Hence, we find plaintiffs "negligence" cause of action asserts a negligent misrepresentation claim. We turn to the question whether plaintiff has stated a cause of action for negligent misrepresentation.
To state a cause of action for negligent misrepresentation, plaintiff must allege facts establishing that defendants owed him a duty to communicate accurate information. As discussed below, California courts have recognized a cause of action for negligent misrepresentation, i.e., a duty to communicate accurate information, in two circumstances. The first situation arises where providing false information poses a risk of and results in physical harm to person or property. The second situation arises where information is conveyed in a commercial setting for a business purpose. However, no California court has recognized a cause of action for negligent misrepresentation resulting in emotional injury alone. California law is consistent with the Restatement Second of Torts. The Restatement Second of Torts also recognizes a duty to communicate accurate information only where there is a risk of physical harm or the representation is made in a commercial setting for a business purpose.

i. Negligent Misrepresentations Involving a Risk of Physical Harm
As noted above, a cause of action for negligent misrepresentation exists under California law and the Restatement Second of Torts when there is a risk of physical harm to person or property. Also, actual physical harm must result. (Randi W. v. Muroc Joint Unified School Dist., supra, 14 Cal.4th at p. 1075, 60 Cal. Rptr.2d 263, 929 P.2d 582; Garcia v. Superior Court, supra, 50 Cal.3d at pp. 734-737, 268 Cal.Rptr. 779, 789 P.2d 960; Gawara v. United States Brass Corp. (1998) 63 Cal.App.4th 1341, 1354, 74 Cal.Rptr.2d 663; Osborn v. Irwin Memorial Blood Bank (1992) 5 Cal.App.4th 234, 250-251, 7 Cal.Rptr.2d 101; Hanberry v. Hearst Corporation (1969) 276 Cal.App.2d 680, 685, 81 Cal.Rptr. 519; BAJI No. 12.80; Rest.2d Torts, § 311.) As the Supreme Court explained in Garcia, v. Superior Court, supra, 50 Cal.3d at page 734, 268 Cal.Rptr. *902 779, 789 P.2d 960, "Negligent misrepresentations involving a risk of physical harm are actionable under the circumstances described in the Restatement Second of Torts, supra, section 311." (Accord, Hanberry v. Hearst Corp., supra, 276 Cal. App.2d at pp. 683-688, 81 Cal.Rptr. 519.)
Section 311 of the Restatement Second of Torts is titled, "Negligent Misrepresentation Involving Risk of Physical Harm." It states: "(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results [¶] (a) to the other, or [¶] (b) to such third persons as the actor should expect to be put in peril by the action taken. [¶] (2) Such negligence may consist of failure to exercise reasonable care [¶] (a) in ascertaining the accuracy of the information, or [¶] (b) in the manner in which it is communicated." The rule stated in the Restatement Second of Torts section 311 extends beyond the business or professional context: "The rule is not . . . limited to information given in a business or professional capacity, or to those engaged in a business or profession. It extends to any person who, in the course of an activity which is in furtherance of his own interests, undertakes to give information to another, and knows or should realize that the safety of the person of others may depend upon the accuracy of the information." (Rest.2d Torts, § 311, com. b.) The rule stated in the Restatement Second of Torts section 311 also applies to information voluntarily given without benefit to the actor: "The rule stated in this Section may also apply where the information given is purely gratuitous, and entirely unrelated to any interest of the actor, or any activity from which he derives any benefit. . . . Where, as under the rule stated in this Section, the harm which results is bodily harm to the person, or physical harm to the property of the one affected, there may be liability for the negligence even though the information is given gratuitously and the actor derives no benefit from giving it." (Rest.2d Torts, § 311, com. c.)
In Garcia v. Superior Court, supra, 50 Cal.3d at pages 734-737, 268 Cal.Rptr. 779, 789 P.2d 960, the Supreme Court held that a person under no duty to speak, but who nevertheless chooses to provide information and who knows or should realize that the plaintiffs physical safety may depend on the accuracy of the matters conveyed, has a duty to use reasonable care in communicating. In Garcia, a woman was killed by a convicted murderer on parole. Her children sued the murderer's parole officer and the state for wrongful death. The parole officer knew the murderer had threatened to kill the plaintiffs' mother, "but [he] nevertheless told her that the parolee would `not come looking' for her." (Garcia v. Superior Court, supra, 50 Cal.3d at p. 731, 268 Cal.Rptr. 779, 789 P.2d 960.) The Supreme Court held: "[T]he absence of a duty to speak does not entitle one to speak falsely. Thus, we may approach the duty question in this case by asking whether a reasonable parole officer, having chosen for whatever reason to provide information to a potential victim about a parolee's dangerousness, `knows or should realize that [the listener's] safety . . . may depend on the accuracy of the information.' (Rest.2d. Torts, supra, § 311, com. b, at p. 106.)" (Garcia v. Superior Court, supra, 50 Cal.3d at p. 736, 268 Cal.Rptr. 779, 789 P.2d 960.) The Supreme Court concluded the parole officer, having chosen to communicate the information to the plaintiffs' mother, had a duty to use reasonable care in doing so. (Ibid.)
The Supreme Court held the Garcia plaintiffs had sufficiently alleged, except with respect to reasonable reliance, a *903 cause of action for negligent misrepresentation involving a risk of physical harm; the Supreme Court concluded the plaintiffs should have been granted leave to amend to allege actual and reasonable reliance. (Id. at p. 732, 268 Cal.Rptr. 779, 789 P.2d 960.) The Supreme Court explained: "Negligent misrepresentations involving a risk of physical harm are actionable under the circumstances described in Restatement Second of Torts, supra, section 311. . . . California courts, in holding that plaintiffs have stated causes of action for negligent misrepresentation causing physical harm, have relied both on section 311 (Hanberry v. Hearst Corp. [, supra,] 276 Cal.App.2d 680, 683-688, [81 Cal.Rptr. 519][ ]) and on Civil Code section 1710, subdivision (2) (Barbara A. v. John G. (1983) 145 Cal. App.3d 369, 375-376, [193 Cal.Rptr. 422][ ].) Scholars have also recognized the theory. (Prosser & Keeton on Torts (5th ed.1984) ch. 5, § 33, at pp. 205, fn. 26 & 205-208.) [¶] . . . [¶] Misrepresentations involving a risk of physical harm constitute an exception to the ordinary rule that `liability [for negligent misrepresentation] is imposed only on those who supply information for business purposes in the course of a business or profession.' (See 5 Witkin, Summary of Cal. Law, supra, Torts, § 721, at p. 820.) The ordinary rule is based on the principle that, in financial matters, a plaintiff `cannot expect the defendant to exercise the same degree of care [in social meetings] as he would when acting in a business or professional capacity.' (Ibid.) The misrepresentations in this case, of course, were not made in a financial context. However, the duty to use reasonable care in giving information applies more broadly when physical safety is involved. In cases `[w]here . . . the harm which results is bodily harm to the person, or physical harm to the property of the one affected, there may be liability for negligence even though the information is given gratuitously and the actor derives no benefit from giving it.' (Rest.2d Torts, supra, § 311, com. c, at p. 107); see also Barbara A v. John G., supra, 145 Cal.App.3d at pp. 375-376, [193 Cal.Rptr. 422]; Connelly v. State of California (1970) 3 Cal.App.3d 744, 752, [84 Cal.Rptr. 257][ ] (finding causes of action for gratuitous negligent misrepresentations involving risks of physical harm.)" (Garcia v. Superior Court, supra, 50 Cal.3d at pp. 734-736, 268 Cal. Rptr. 779, 789 P.2d 960, fns. omitted; see also 34 Cal.Jur.3d, Fraud and Deceit, § 44 ["Although liability for negligent misrepresentations is, as a general rule, only imposed on those who supply information for business purposes in the course of a business or profession, misrepresentations involving a risk of physical harm constitute an exception"].)
More recently, the Supreme Court applied the Restatement Second of Torts section 311 in Randi W. v. Muroc Joint Unified School Dist, supra, 14 Cal.4th at pages 1081-1086, 60 Cal.Rptr.2d 263, 929 P.2d 582. The plaintiff in Randi W. alleged letters of recommendation that failed to disclose prior charges or complaints of sexual misconduct induced a school district to hire a man as a teacher who subsequently sexually assaulted her. (Id. at p. 1070, 60 Cal.Rptr.2d 263, 929 P.2d 582.) The Supreme Court concluded, "[W]e hold, consistent with Restatement Second of Torts sections 310 [intentional misrepresentation] and 311 [negligent misrepresentation], that the writer of a letter of recommendation owes to third persons a duty not to misrepresent the facts in describing the qualifications and character of a former employee, if making these misrepresentations would present a substantial, foreseeable risk of physical injury to the third persons." (Id. at p. 1081, 60 Cal. Rptr.2d 263, 929 P.2d 582.) The Supreme Court further noted that, "In the absence, however, of resulting physical injury, or some special relationship between the parties, *904 the writer of a letter of recommendation should have no duty of care extending to third persons for misrepresentations made concerning former employees." (Ibid.)
The Courts of Appeal have relied on section 311 of the Restatement Second of Torts in other cases, including Osborn v. Irwin Memorial Blood Bank, supra, 5 Cal. App.4th at pages 250-251, 7 Cal.Rptr.2d 101, in which a three-week-old infant contracted acquired immune deficiency syndrome from a blood transfusion. A receptionist for the defendant blood bank had negligently misrepresented to the child's parents that the institution did not use donations of blood by family members. (Id. at p. 246, 7 Cal.Rptr.2d 101; see also, Weissich v. County of Marin (1990) 224 Cal.App.3d 1069, 1081-1083, 274 Cal.Rptr. 342 [Rest.2d Torts, § 311 held not to extend to implied representations]; Connelly v. State of California, supra, 3 Cal. App.3d at pp. 761-762, 84 Cal.Rptr. 257 (cone, and dis. opn. of David, J.) [where a marina owner inquired of and relied upon flood forecast information given by a government agency].)
In the present case, plaintiff alleges he suffered both emotional and physical injury as a result of defendants' negligent misrepresentations concerning the TB test. At oral argument, however, plaintiffs counsel conceded that the physical injuries flowed from the emotional harm and not directly from the alleged negligent misrepresentations. Put simply, but not to understate the allegation, plaintiff was so upset he became physically ill. (See Erlich v. Menezes, supra, 21 Cal.4th at p. 557, 87 Cal.Rptr.2d 886, 981 P.2d 978 [in contract breach case, the only physical injury alleged was heart disease, which flowed from emotional distress, and not directly from the negligent construction of the residence].) The essence of plaintiffs claim is for emotional injury. No physical harm flowed directly from the misrepresentation. No physical injury was a direct result of plaintiffs submission to the TB test in reliance on defendants' misrepresentation. Moreover, the alleged misrepresentation did not involve a risk of physical harm. As the Supreme Court explained in Garcia, there is a risk of physical harm when the one who undertakes to provide information "`knows or should realize that the safety of the person or others may depend on the accuracy of the information.' [Citation.]" (Garcia v. Superior Court, supra, 50 Cal.3d at p. 735, 268 Cal.Rptr. 779, 789 P.2d 960, quoting Rest.2d Torts, § 311, com. b, p. 106.) When defendants were asked, on behalf of a conscientious ethical vegan, whether the TB test contained animal products, they had insufficient reason to believe that plaintiffs physical safety might depend on the accuracy of their information. That plaintiff, for sincere ethical reasons, would not submit to the TB test if it did contain animal products raised no apparent threat of physical harm. We conclude that, under these circumstances, plaintiff has not stated a cause of action for negligent misrepresentation involving a risk of physical harm consistent with existing California law.
Nor do we perceive any public policy basis for expanding the law's reach. As the Supreme Court stated in Erlich v. Menezes, supra, 21 Cal.4th at page 560, 87 Cal.Rptr.2d 886, 981 P.2d 978, "A rule which focuses not on the risks contracting parties voluntarily assume but on one party's reaction to inadequate performance, cannot provide any principled limit on liability." To say that defendants should be held liable for plaintiffs emotional, and consequent physical, injuries because they misadvised that the TB test contained no animal products would expand liability without legally sufficient public policy purpose.

*905 ii. Negligent Misrepresentations Made in a Business Setting for a Business Purpose
A cause of action for negligent misrepresentation will also exist where information is given in a business or professional capacity for such a purpose. (Garcia v. Superior Court, supra, 50 Cal.3d at p. 735, 268 Cal.Rptr. 779, 789 P.2d 960; Johnson v. State of California (1968) 69 Cal.2d 782, 800, 73 Cal.Rptr. 240, 447 P.2d 352 [tort of misrepresentation "applies to interferences with financial or commercial interest"]; see Simonian v. Patterson (1994) 27 Cal.App.4th 773, 782-783, 32 Cal. Rptr.2d 722 [no liability for gratuitous promise made in social setting]; 34 Cal. Jur.3d, Fraud and Deceit, §§ 43, 44.) As noted above, the Supreme Court has held the "ordinary rule" is that liability for negligent misrepresentation is imposed only on those who supply information for "`business purposes in the course of a business or profession.'" (Garcia v. Superior Court, supra, 50 Cal.3d at p. 735, 268 Cal.Rptr. 779, 789 P.2d 960.) As Witkin notes, "[L]iability [for negligent misrepresentation] is imposed only on those who supply information for business purposes in the course of a business or profession. This rules out casual statements or opinions given in ordinary private conversations or social meetings; the plaintiff cannot expect the defendant to exercise the same degree of care as he would when acting in a business or professional capacity. [Citations.]" (5 Witkin, Summary of Cal. Law, supra, Torts, § 721, p. 820; Rest.2d. Torts, § 552 (1977); 34 Cal. Jur.3d, Fraud and Deceit, §§ 43, 44.). The United States Supreme Court has similarly observed: "[M]any familiar forms of negligent conduct may be said to involve an element of `misrepresentation,' in the generic sense of that word, but `[s]o far as misrepresentation has been treated as giving rise in and of itself to a distinct cause of action in tort, it has been identified with the common law action of deceit,' and has been confined `very largely to the invasion of interests of a financial or commercial character, in the course of business dealings.' Prosser, Torts, § 85, 'Remedies for Misrepresentation,' at 702-703 (1941 ed.). See also 2 Harper and James, Torts, § 29.13, at 1655 (1956)." (U.S. v. Neustadt (1961) 366 U.S. 696, 711, fn. 26, 81 S.Ct. 1294, 6 L.Ed.2d 614.) The "ordinary rule," that "`liability [for negligent misrepresentation] is imposed only on those who supply information for business purposes in the course of a business or profession,' [citation] . . . is based on the principle that, in financial matters, a plaintiff 'cannot expect the defendant to exercise the same degree of care [in social meetings] as he would when acting in a business or professional capacity.' [Citation.]" (Garcia v. Superior Court, supra, 50 Cal.3d at p. 735, 268 Cal.Rptr. 779, 789 P.2d 960.)
Section 552 of the Restatement Second of Torts is titled "Information Negligently Supplied for the Guidance of Others." Section 552 of the Restatement Second of Torts states: "(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. [¶] (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered [¶] (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and [¶] (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction. *906 [¶] (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them."
The rule articulated in subsection 1 of section 522 of the Restatement Second of Torts is limited however. Comment c to section 522 of the Restatement Second of Torts identifies the limitation as follows: "c. Pecuniary interest in the transaction. The rule stated in Subsection (1) applies only when the defendant has a pecuniary interest in the transaction in which the information is given. If he has no pecuniary interest and the information is given purely gratuitously, he is under no duty to exercise reasonable care and competence in giving it. The situation is analogous to that of one who gratuitously lends or otherwise supplies a chattel, whose duty is only to disclose any facts he knows that may make it unsafe for use." (Original italics; State by Bronster v. U.S. Steel Corp. (1996) 82 Hawaii 32, 919 P.2d 294, 307-308; Mur-Ray Management v. Founders Title (Ariz.App.1991) 169 Ariz. 417, 819 P.2d 1003, 1009.) Further, liability under subsection 1 of section 522 of the Restatement Second of Torts arises in the commercial setting. (Rest.2d Torts, § 522, com.a.) That the information is given in the course of a defendant's business is an indication the defendant has a pecuniary interest in supplying the information, but it is not conclusive. (Rest.2d Torts, § 552, com. d; see Lawyers Title Ins. Corp. v. Baik (2002) 147 Wash.2d 536, 55 P.3d 619, 625-626; Lindstrand v. Transamerica Title Ins. Co. (1994) 127 Or.App. 693, 874 P.2d 82, 84-85.)
The illustration in comment c to the Restatement Second of Torts section 552 is taken from Renn v. Provident Trust Co. of Philadelphia (1938) 328 Pa. 481, 196 A. 8, 9-10. (Rest.2d Torts, § 552, Reporter's Note.) In Renn, the plaintiffs were the liquidating trustees of a building and loan association which held a second mortgage on certain property. The defendant was a trust company that held the first mortgage on the property. The plaintiffs asked the defendant to provide a copy of a will that conveyed to the mortgagor an interest in a relative's estate. Defendant complied, but mistakenly provided a copy of a will by a man of identical name as the deceased relative of the mortgagor. The plaintiffs relied on the incorrect will to their detriment. In an action by the plaintiffs against the defendant, the Supreme Court of Pennsylvania held the defendant was not liable for negligently furnishing incorrect information. (Id. at pp. 9-10.) The court held: "It was not in the line of defendant's business to supply copies of wills to any one. Trust companies are not the official repositories of such documents, not even of those under which they act. They, as every one else, must procure their copies from the register of wills on payment of the regular fee. They do not usually make it a practice to prepare copies for others . . ., and it is not alleged that the practice of this defendant was otherwise. It was exceptional and a pure courtesy that it was done in this instance . . . .; to hold the defendant liable on account of a mistake made by one of its subordinate officers performing only an act of courtesy would be unfair and without legal justification." (Id. at p. 10.)
The information provided to plaintiff in the present case  that the TB test did not contain any animal products  was not given in a commercial setting for a business purpose. Defendants are in the business of distributing the TB test. And they did respond to the inquiry in their business capacities. But the inaccurate information concerning the TB test was not offered to the unidentified employee of *907 Southern California Permanente Medical Group as part of a business transaction between plaintiff and defendants. Defendants had no significant pecuniary interest in whether plaintiff submitted to the TB test or not. Defendants' alleged misrepresentations did not interfere with any financial or business interest. Under these circumstances, plaintiff has not stated a cause of action for negligent misrepresentation in a business setting for a business purpose.

iii. Negligent Misrepresentations Involving a Risk of Emotional Injury
As noted above, we find no California court has recognized a cause of action for negligent misrepresentation involving a risk of emotional harm alone. In Branch v. Homefed Bank (1992) 6 Cal.App.4th 793, 800, 8 Cal.Rptr.2d 182, the Court of Appeal for the Fourth District, Division One, considered an employment case in which misrepresentations were made to the employee and noted: "Recovery of emotional distress damages has been allowed, absent impact or physical injury, in certain specialized classes of cases. Where the negligence is of a type which will cause highly unusual as well as predictable emotional distress, recovery has been allowed (Allen v. Jones (1980) 104 Cal.App.3d 207, 215, [163 Cal.Rptr. 445][ ] [mishandling of the cremated remains of plaintiffs brother]; Molien v. Kaiser Foundation Hospitals [, supra,] 27 Cal.3d [at p.] 930, [167 Cal.Rptr. 831, 616 P.2d 813][ ] [negligent advice to patient that she suffered from syphilis, resulting in severe distress to her husband].) Recovery has also been allowed when the negligence arises in a situation involving breach of fiduciary or quasi-fiduciary duties, as in bad faith refusal to pay insurance proceeds. (Crisci v. Security Ins. Co. (1967) 66 Cal.2d 425, [58 Cal.Rptr. 13, 426 P.2d 173][ ]; Gruenberg v. Aetna Ins. Co. (1973) 9 Cal.3d 566, [108 Cal.Rptr. 480, 510 P.2d 1032][]; Jarchow v. Transamerica Title Ins. Co. (1975) 48 Cal. App.3d 917, [122 Cal.Rptr. 470][ ].) Of course we also have the Dillon v. Legg (1968) 68 Cal.2d 728, [69 Cal.Rptr. 72, 441 P.2d 912][ ] potential of recovery of damages for mental distress through the witnessing of an injury to a close relative . . . ." The Court of Appeal concluded, "Recovery for the inevitable distress resulting from finding oneself the victim of a negligent tortfeasor [is not recognized] unless malice, breach of a fiduciary duty, physical injury or impact, or some other unusually extreme or outrageous circumstance, can be shown." (Branch v. Homefed Bank, supra, 6 Cal.App.4th at p. 801, 8 Cal.Rptr.2d 182, fn. omitted.) In reaching that conclusion, the Branch court also found that the analysis for permitting recovery of emotional distress damages should be essentially the same whether the cause of action is for negligent misrepresentation or negligent infliction of emotional distress. (Id. at p. 801, 8 Cal. Rptr.2d 182, fn. 8.) Branch has been cited by other Courts of Appeal: Yu v. Signet Bank/Virginia (1999) 69 Cal.App.4th 1377, 1397, 82 Cal.Rptr.2d 304 "In general, a plaintiff `incurring neither physical impact nor physical damage, and whose loss (other than emotional distress) is solely economic, is entitled neither to punitive damages nor to a recovery for emotional distress' [Citations."]; Di Loreto v. Shumake (1995) 38 Cal.App.4th 35, 42, 45 Cal. Rptr.2d 22 [not all mental anguish is compensable], Finch v. Brenda Raceway Corp. (1994) 22 Cal.App.4th 547, 554, 27 Cal.Rptr.2d 531 [emotional distress damages are not recoverable when a negligent misrepresentation causes only economic injury]; Smith v. Superior Court (1992) 10 Cal.App.4th 1033, 1040, 13 Cal.Rptr.2d 133 ([mere negligence will not support a recovery for mental suffering where the defendant's tortious conduct has resulted *908 in only economic injury to the plaintiff].) In addition, Branch is cited in Chin, et al, California Practice Guide: Employment Litigation (The Rutter Group 2002) paragraph 5:601 for the following proposition: "[I]n the absence of physical impact or physical injury, there can be no recovery for emotional distress damages [in negligent misrepresentation cases]." (See also 5 Witkin, Summary of Cal. Law (9th ed. 2002 supp.) Torts, § 721, p. 539 [no emotional distress damages recoverable for negligent misrepresentation]; Croskey et al, Cal. Practice Guide: Insurance Litigation (The Rutter Group 2002) Damages, ¶ 13:85 [emotional distress damages "generally are not recoverable in negligent misrepresentation cases, at least where the only other loss is economic in character"]; 34 Cal.Jur.3d, Fraud and Deceit, § 109 ["damages for emotional distress have been held not to be recoverable in actions based on negligent misrepresentations"].)
Plaintiffs case does not fit into any of the circumstances identified in Branch as permitting recovery of emotional distress damages. Defendants' inaccurate response to the inquiry by the Southern California Permanente Medical Group employee was nothing like: a physician undertaking to deliver a child; a therapist agreeing to treat a patient; a mortuary contracting to provide burial services; or a doctor telling a patient to advise her husband that she has syphilis. Defendants owed no fiduciary or quasi-fiduciary duty to plaintiff. Plaintiff did not witness any injury to a close relative. Nothing in this case suggests defendants should have foreseen plaintiffs sensitive emotional response.
Further, courts in other jurisdictions have specifically declined to recognize a cause of action for negligent misrepresentation resulting in emotional injury. (Grozdanich v. Leisure Hills Health Center, Inc. (D.Minn.1998) 25 F.Supp.2d 953, 988, reconsideration den. (1999) 48 F.Supp.2d 885, 887-892; Brogan v. Mitchell Intern., Inc. (1998) 181 Ill.2d 178, 229 Ill.Dec. 503, 692 N.E.2d 276, 278-279; see also D.S.A., Inc. v. HISD (Tex.1998) 973 S.W.2d 662, 664 ["A party may recover for negligent misrepresentations involving a risk of physical harm only if actual physical harm results. See Restatement (Second) of Torts § 311 (1965)."].) In Brogan v. Mitchell Intern., Inc., supra, 229, 111. Dec. 503, 692 N.E.2d at page 278, the Illinois Supreme Court held, "There exists no broad duty to avoid misrepresentations that cause only emotional harm. This court has adopted the Restatement (Second) of Torts, § 311 (1965), which is entitled 'Negligent Misrepresentation Involving Risk of Physical Harm.' [Citation.] Physical harm is defined as encompassing personal injury or property damage, not emotional injury. [Citation.] The limited nature of negligent misrepresentation liability serves to preserve the proper sphere of contractual-based recovery and prevents the creation of tort liability which could unduly impede the flow of communication in society."
In Grozdanich v. Leisure Hills Health Center, Inc., supra, 25 F.Supp.2d at page 988, the United States District Court for the District of Minnesota likewise held that an emotional injury does not fall within the purview of the physical harm requirement of a claim under section 311 of the Restatement Second of Torts. In its subsequent opinion denying reconsideration in Grozdanich, the district court analyzed the Restatement Second of Torts section 311 text and found it supported the conclusion that there is no cause of action for negligent misrepresentation causing emotional injury. (Grozdanich v. Leisure Hills Health Center, supra, 48 F.Supp.2d at pp. 888-892.) The court ruled: "Recalling that the Restatement considers `physical harm' to be indispensable to a successful claim under Section 311, we can draw some guidance from the Restatement's *909 provision that `[t]he words "physical harm" are used throughout the Restatement of [Torts] to denote the physical impairment of the human body, or of land or chattels.' Restatement (Second) of Torts § 7(3). The commentary to Section 7 reveals that, in the context of a physical impairment of the human body, physical harm is synonymous with `bodily harm,' as defined in Section 15 of the Restatement. Id., comment e. [¶] In turn, Section 15 defines 'bodily harm' as `any physical impairment of the condition of another's body, or physical pain or illness.' Restatement (Second) of Torts § 15. Had the drafters of Section 311 intended to expand its reach beyond physical harm, physical impairment, and physical pain or illness, we are satisfied they would have designated injuries, both mental and physical, or they would have more sweepingly defined the term `physical injury' so as to encompass something other than physical injuries to another's body. Notably, in a comment to Section 15, the drafters recognized that, unlike a claim for negligent misrepresentation, an action for battery allows a recovery for a physical contact `that causes no bodily harm. . . .' Id., comment a [emphasis added]. We believe that this textual framework, which necessarily applies to Section 311's employment of the term `physical harm,' excludes offensive bodily contact from qualifying as `physical harm,' even though the contact may offend a reasonable sense of personal dignity, unless the contact produces `physical impairment of the condition of another's body, or physical pain or illness.'" (Grozdanich v. Leisure Hills Health Center, supra, 48 F.Supp.2d at p. 891, fn. omitted.)
Here, plaintiff asserts he suffered emotional injury which gave rise to physical harm. But the gist of his claim is for emotional injury. The direct result of defendant's alleged wrongdoing was emotional rather than physical harm. Moreover, we find California law does not recognize a cause of action for negligent misrepresentation involving a risk of emotional injury. Therefore, plaintiff has not stated a cause of action for negligent misrepresentation under the facts of this case.

C. Conclusion
Plaintiff has not stated a cause of action for negligence, negligent infliction of emotional distress, or negligent misrepresentation. Further, plaintiff contends he should have been granted leave to amend. However, plaintiff has not established that there is a reasonable possibility the defect can be cured by amendment. Plaintiff has not shown any abuse of discretion in denying leave to amend. (Zelig v. County of Los Angeles, supra, 27 Cal.4th at p. 1126, 119 Cal.Rptr.2d 709, 45 P.3d 1171; Aubry v. Tri-City Hospital Dist, supra, 2 Cal.4th at p. 967, 9 Cal.Rptr.2d 92, 831 P.2d 317; Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58.)

IV. DISPOSITION
The judgment is affirmed. Defendants, Merck & Co., Inc., Merck Ventures, Inc., Astra Merck, Inc., and Merck Hamilton, Inc. are to recover their costs on appeal from plaintiff, Jerold Daniel Friedman.
We concur: GRIGNON and ARMSTRONG, JJ.
NOTES
[*] Werdegar, J., and Chin, J., did not participate therein.
[1] When we use the words "idiosyncratic" or "hypersensitive" in the body of this opinion, we do so only for purposes of synthesizing the law as others have stated it. We are not utilizing such terms to derogatorily demean plaintiffs honestly held ethical beliefs.