Filed 3/15/21 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CAROL LEINING,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>FOSTER POULTRY FARMS, INC. et al.,<br><br>  Defendants and Respondents. | B291600<br><br> (Los Angeles County<br> Super. Ct. No. BC588004)<br><br><br>**ORDER MODIFYING OPINION**<br> [There is no change in judgment] |

BY THE COURT:

  It is ordered that the opinion filed herein on February 23, 2021, is modified as follows:

  1. On page 1, delete counsel listings for Defendants and Respondents and replace with:

  Duane Morris, Michelle Pardo, Rebecca Bazan and Paul J. Killion for Defendant and Respondent American Humane Association.

  Mayer Brown, Dale J. Giali, Elizabeth Crepps and Donald M. Falk for Defendant and Respondent Foster Poultry Farms, Inc.

2.      On page 16, last paragraph, first sentence that reads "Against this overwhelming weight of authority, Leining offers no authority that a labeling claim is ~~was~~ not preempted under the PPIA" should be deleted and replaced with:

Against this overwhelming weight of authority, Leining offers no authority that a labeling claim is not preempted under the PPIA.

There is no change in judgment.

_____

RUBIN, P. J.           BAKER, J.          KIM, J.

Filed 2/23/21 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CAROL LEINING,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>FOSTER POULTRY FARMS, INC.<br>et al.,<br><br>      Defendants and Respondents. | B291600<br><br>(Los Angeles County<br> Super. Ct. No. BC588004) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Shepard Wiley, Jr., Judge. Affirmed.

Drinker Biddle & Reath, Sheldon Eisenberg, Ryan M. Salzman and Mark E. Haddad for Plaintiff and Appellant.

Duane Morris, Michaelle Pardo, Rebecca Bazan and Paul J. Killion for Defendants and Respondents American Humane Association.

Mayer Brown, Dale J. Giali, Elizabeth Crepps and Donald M. Falk for Defendants and Respondents Foster Poultry Farms, Inc.

_____

The American Humane Association has created a farm animal welfare program, by which it certifies farm-based food producers who comply with its animal welfare standards. If a producer complies with American Humane's standards, the producer can use American Humane's "American Humane Certified" logo on its food, provided it also pays a licensing fee for use of American Humane's trademark.

Foster Poultry Farms, Inc. participates in the American Humane program and uses the American Humane Certified logo on all its chicken products sold in California. Foster Farms must obtain federal approval for the labels of its chicken products, and has obtained that approval for the labels which include American Humane's logo.

Foster Farms charges more for its chicken than other producers whose chicken does not bear the American Humane Certified logo. Plaintiff Carol Leining purchased some Foster Farms chicken, in reliance on the American Humane Certified logo on its label. She believed that the American Humane certification meant that the chicken had been humanely treated; but in this litigation, she alleges that the true facts are American Humane certification means nothing, and Foster Farms's chickens were treated inhumanely.

Leining brought suit against Foster Farms for its allegedly misleading labels and against American Humane for its allegedly negligent certification. After extensive litigation, both defendants were granted summary judgment. We affirm, on the basis that Leining has not pleaded a viable cause of action against either defendant. The claims against Foster Farms are barred by federal

preemption, and the negligent certification claim against American Humane is not viable in the absence of physical injury.[1]

### *FACTUAL AND PROCEDURAL BACKGROUND*[2]

**1.**     *Allegations of the Complaint*

American Humane is a non-profit organization. It operates a program called American Humane Certified, which it represents " 'provide[s] verifiable assurance to customers and retailers that products carrying the American Humane Certified™ label have met rigorous, science-based animal welfare standards and that the animals in the program were humanely raised.' "

Leining alleges as follows. Foster Farms paid American Humane for the use of its certification. The certification "creates a reasonable expectation among consumers that the chicken they are purchasing is produced under circumstances that would be understood to be humane." This impression is untrue and Foster Farms's chickens are instead treated in a manner that "falls well short of a reasonable consumer's expectation for humane treatment." In fact, American Humane certifies chicken produced under the *industry's* standard operating procedures, and the birds

---

[1]     The two respondents, the American Humane Association and Foster Farms Poultry, Inc., have filed joint briefs in this appeal. Not all issues raised in the appeal apply to both respondents. We generally use the parties' names to identify them and only use "respondents" or "defendants" when the discussion applies to both parties.

[2]     Because we conclude that, in effect, both defendants were entitled to judgment on the pleadings, we limit our factual discussion to the allegations of Leining's operative complaint and matters of which we can take judicial notice, such as guidelines promulgated by federal agencies.

it certifies are treated no better than any other chicken farmed for food. Leining bought Foster Farms's chicken in reliance on the false representation, paying more than the price of other chicken which did not carry the American Humane Certified label.

## 2. *Foster Farms's Use of the American Humane Certified Logo for the Sale of Its Chicken is Federally Approved*

All poultry and poultry products sold in the United States are subject to the Poultry and Poultry Products Inspection Act (PPIA). (21 U.S.C. §§ 451 et seq.) Implementing regulations require that no label may be used on poultry or a poultry product unless it has been pre-approved by the Food Safety and Inspection Service (FSIS).[3] (9 C.F.R. 412.1, subd. (a).)

A label claim "regarding the raising of animals" is considered a special statement or claim which requires submission of a "sketch" label and approval of that sketch. (9 C.F.R. 412.1, subds. (c)-(e).) Foster Farms submitted its labels for sketch approval; in order to support its use of the American Humane Certified logo, it submitted the certificates of approval it had received from American Humane. The FSIS approved the labels which included the American Humane Certified logo.

## 3. *FSIS Labeling Guidelines*

During the time Foster Farms was using the American Humane certification on its label, and well into this appeal, animal welfare advocates were challenging the standards used by

---

[3] There is an exception for "generically approved labels," which are considered preauthorized. (9 C.F.R. 412.2.) The exception does not apply in this case.

FSIS in its approval of labels which claimed the humane treatment of animals used for food.[4]

In December 2019, the FSIS updated its Labeling Guideline on Documentation Needed to Substantiate Animal Raising Claims for Label Submission.  (<https://www.fsis.usda.gov/wps/wcm/connect/6fe3cd56-6809-4239-b7a2-bccb82a30588/Raising Claims.pdf?MOD=AJPERES> [as of Feb. 11, 2021], archived at <https://perma.cc/LR7E-QMMR>.)  The guidelines do not include substantive requirements for a claim of humane animal treatment, but simply require that the label either describe what it means by humane, or, if it uses a third-party certification, contain the certifier's name, logo, and website.  (*Id.* at pp. 10-11, 15.)

The FSIS responded, via the Federal Register, to a number of the comments it had received on its prior guideline, which had been published in 2016.  (84 FR 71359; see 81 FR 68933.)  Of

---

[4]      The issue was raised as early as May 2014, when the Animal Welfare Institute submitted a petition for rulemaking, asking the FSIS to create a rule mandating that any label claims of humane animal treatment, and other animal raising claims, be supported by third-party certification, from certifiers who audited according to published standards which exceeded conventional industry practices.  (<https://www.fsis.usda.gov/wps/wcm/connect/5bdab0ca-8072-480b-9bd9-c9bc04b56531/Petition-AWI-Labeling-0514.pdf?MOD=AJPERES> [as of Feb. 11, 2021], archived at <https://perma.cc/5C3B-39QH>.)  The petition would ultimately be denied in February 2019. (<https://www.fsis.usda.gov/wps/wcm/connect/ed11c92b-d0f8-4208-bae6-2e633bb49b37/14-01-FSIS-Final-Response-022219.pdf?MOD=AJPERES> [as of Feb. 11, 2021], archived at <https://perma.cc/ZS9S-4W86>.)

5

particular relevance, the FSIS had received comments from animal welfare advocacy organizations and individuals who took the position that FSIS "currently approves claims based on standards that do not meet consumer expectations. To address these concerns, the comments . . . stated that FSIS should only approve animal welfare and environmental stewardship claims that have been certified by an independent third-party certifying organization that has established standards that exceed the conventional industry standards defined by meat and poultry trade associations." (84 FR 71362.) FSIS disagreed, explaining, "The issues raised in the comments . . . show that consumers, producers, and certifying entities have different views on the specific animal production practices that should be associated with certain animal welfare or environmental stewardship claims. Thus, because animal welfare or environmental stewardship claims mean different things to different people, a claim that is defined by a specific third-party certifying organization's animal-raising standards cannot reflect the diverse views associated with these types of claims." (84 FR 71362-71363.)

With respect to third-party certification, FSIS explained, "If the claim is certified by a third-party certifying organization, FSIS will approve the label bearing the claim if it includes the certifying entity's name, website address, and logo, when the organization has a logo, as described in the guideline. Under this approach, the labeling of a meat or poultry product that bears an animal welfare or environmental stewardship claim includes the information that consumers need to determine whether the animal-raising practices used to define a particular animal claim meets their expectations for the claim." (84 FR 71363, fn. omitted.)

6

There is no dispute that FSIS approved Foster Farms's labels containing the American Humane logo. Leining does not allege that Foster Farms was ever out of compliance with the FSIS's governing guidelines.

### 4. *Plaintiff's Initial Complaint*

On July 13, 2015, Leining filed her class action complaint, initially naming only Foster Farms as a defendant. She alleged that Foster Farms's use of the American Humane Certified logo on its labels was deceptive and misleading because her "objectively reasonable" understanding of the certification was that the chickens used by Foster Farms "were afforded a comfortable existence and a quick and painless death." She would not have purchased the chicken had she known that Foster Farms's chickens "were not in fact treated humanely, or even significantly differently from most other chickens on the market." She alleged causes of action for unfair competition, negligent misrepresentation, breach of express warranty, and breach of the implied warranty of merchantability – all on the theory that the label itself was deceptive because the chicken was not produced under humane circumstances.

### 5. *Foster Farms's Initial Demurrer*

Foster Farms demurred. The demurrer is not part of the record on appeal, but we do have the court's ruling sustaining the demurrer with leave to amend. The trial court was concerned that Leining was attempting to appoint herself arbiter of what is, or is not, humane. It explained, "Leining's complaint has no legal basis. Leining cites no case in which a producer complied with third party standards but was found guilty of misrepresentation or breach of warranty because, in someone's opinion, the third-party standards were lax." However, the court believed Leining

7

might be able to state a claim under a different theory, and drew the parties' attention to *Hanberry v. Hearst Corp.* (1969) 276 Cal.App.2d 680 (*Hanberry*), a case which held that, under certain circumstances, a plaintiff physically injured by a product may be able to state a claim in negligent misrepresentation against a third party who had endorsed the product.

**6.      *Leining's Operative Complaint***

The operative complaint is Leining's first amended complaint.  Leining re-alleged her causes of action against Foster Farms for unfair competition, negligent misrepresentation, breach of express warranty, and breach of the implied warranty of merchantability.  She reasserted her original theory of relief supporting each of these causes of action—that her objectively reasonable understanding of the American Humane Certified logo on the label was that Foster Farms's chickens had been afforded a comfortable existence and a quick and painless death, but this was untrue.

In accordance with the trial court's suggestion, Leining also added American Humane as a defendant, and alleged against it a cause of action for negligent misrepresentation.  Leining specifically alleged that American Humane either made no examination of whether Foster Farms's chickens were humanely raised according to science-based standards or, if any examination had been performed, it was careless and negligent.

**7.      *Demurrers to the Operative Complaint***

Both Foster Farms and American Humane demurred. Foster Farms argued, among other things, federal preemption, in that all of the causes of action against it were based on its labels, which had been approved by the FSIS.  American Humane demurred as well, arguing that *Hanberry* was inapplicable in the

absence of physical injury, and that, in any event, its certification was not false.

The trial court overruled both demurrers. The court continued to believe that Leining had not properly alleged a cause of action for direct liability on the merits against Foster Farms. However, it concluded that Leining could pursue her cause of action for negligent misrepresentation against American Humane, due to her allegation that American Humane issued its certification based on a careless or negligent investigation. It reasoned that this theory could also support relief against Foster Farms.

Because the court believed the only validly pleaded theory was what it deemed "fraudulent licensing," the court suggested American Humane and Foster Farms move for summary judgment, by presenting evidence that American Humane's certification was actually based on a reasonable investigation and legitimate standards.

After answering the complaint, Foster Farms and American Humane together moved for summary judgment on the grounds suggested by the trial court.

8.    *Defendants' Motion for Summary Judgment*

Defendants directed their summary judgment motion to the fraudulent licensing theory the trial court concluded had defeated their demurrers. Defendants presented the details of American Humane's certification program, including that its standards were established by its Scientific Advisory Board, and that its audit process objectively determined compliance.

Defendants also argued that Leining's entire complaint was barred by express preemption under the PPIA.

**9.    *Leining's Opposition***

Leining opposed summary judgment on the merits, raising a number of issues with American Humane's standards, its relationship with Foster Farms, and the procedure by which it conducted its audits.

As to federal preemption, Leining argued that label pre-approval is not sufficient to trigger preemption.

**10.    *Trial Court's Ruling***

The court concluded defendants had met their initial burden of establishing that American Humane's certification was independent, reasonable, and involved some level of expertise. The court then considered, and rejected, each of plaintiff's counter-arguments which purportedly raised a triable issue of fact. Judgment was entered for defendants. Leining filed a timely notice of appeal.

On appeal, the parties briefed the merits of the trial court's summary judgment ruling. In the combined respondents' brief, Foster Farms argued that summary judgment in its favor could be affirmed on the basis of federal preemption. We sought additional briefing on the issue which had been raised by American Humane's demurrer – whether a cause of action could be asserted against it under *Hanberry* in the absence of physical injury.

### *DISCUSSION*

We conclude we need not decide whether there are triable issues of fact that would defeat summary judgment. Instead, we first address Foster Farms's federal preemption argument, and conclude the complaint against it, based on its purportedly misleading labels, is barred by federal law. Next, we consider whether a *Hanberry* cause of action for negligent misrepresentation can be asserted against a certifier of a product

in the absence of physical injury.  We conclude that it cannot.
Therefore, we affirm the judgment in favor of defendants.

## 1.    *Standard of Review*

Although this case proceeded to summary judgment, we find
it unnecessary to review the trial court's ruling on the substantial
factual record presented by the parties.  When a motion for
summary judgment presents the argument that the plaintiff
cannot state a cause of action, we review the issue as a matter of
law de novo.  (*Aetna Health Plans of Cal., v. Yucaipa-Calimesa
Joint Unified Sch. Dist.* (1999) 72 Cal.App.4th 1175, 1186-1187.)
We review the sufficiency of Leining's complaint, as we would on
demurrer or judgment on the pleadings.  " 'We treat the demurrer
as admitting all material facts properly pleaded, but not
contentions, deductions or conclusions of fact or law.  [Citation.]
We also consider matters which may be judicially noticed.'
[Citation.]"  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## 2.    *Federal Preemption Bars the Claims Against Foster Farms*

Each of Leining's direct causes of action against Foster
Farms is based on the premise that its labels' inclusion of the
American Humane Certified logo was itself misleading, because
the chicken was not treated in a manner that an objectively
reasonable consumer would consider humane.

We conclude that these causes of action are barred by the
doctrine of federal preemption, based on the express preemption
clause of the PPIA.  The Foster Farms labels, inclusive of the
American Humane Certified logo which Leining alleges is
misleading, were pre-approved by the FSIS, in accordance with
the PPIA.

11

Federal preemption principles derive ultimately from our national Constitution.  " 'The supremacy clause of the United States Constitution establishes a constitutional choice-of-law rule, makes federal law paramount, and vests Congress with the power to preempt state law.'  [Citations.]  Similarly, federal agencies, acting pursuant to authorization from Congress, can issue regulations that override state requirements.  [Citations.]  Preemption is foremost a question of congressional intent:  did Congress, expressly or implicitly, seek to displace state law?  [Citation.]  [¶]  We have identified several species of preemption.  Congress may expressly preempt state law through an explicit preemption clause, or courts may imply preemption under the field, conflict, or obstacle preemption doctrines.  [Citations.]" (*Quesada v. Herb Thyme Farms, Inc.* (2015) 62 Cal.4th 298, 307-308.)

We are here concerned with express preemption.  "Where the federal statute contains an express preemption clause, we must determine the substance and scope of the clause.  [Citation.]  In so doing, we assume 'that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'  [Citation.]  And finally, 'when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily "accept the reading that disfavors preemption." '  [Citation.]"  (*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Becerra* (9th Cir. 2017) 870 F.3d 1140, 1146.)

Our preemption inquiry starts with the applicable federal law.  The PPIA forbids the sale, or the offering for sale, of any poultry or poultry product "under any name or other marking or labeling which is false or misleading . . . ."  (21 U.S.C. § 457(c).)  If

12

the Secretary of the USDA has "reason to believe" any labeling is false or misleading, the Secretary may direct that it not be used. The poultry producer may request a hearing to challenge the determination, which is conclusive absent a direct appeal to the federal Court of Appeals.  (21 U.S.C. § 457(d).)  Similarly, a poultry product is considered "misbranded" if its labeling "is false or misleading in any particular."  (21 U.S.C. § 453(h)(1).)  Sale of misbranded poultry is punishable by fine or imprisonment.  (21 U.S.C. § 461.)  District courts are vested with jurisdiction to enforce and restrain violations of the PPIA.  (21 U.S.C. § 467c.)  All proceedings "for the enforcement or to restrain violations of this chapter shall be by and in the name of the United States." (*Ibid*.)

The preemption clause is contained in 21 United States Code section 467e.  That section provides, in pertinent part, "Marking, labeling, packaging, or ingredient requirements . . . in addition to, or different than, those made under this [chapter] may not be imposed by any State or Territory or the District of Columbia with respect to articles prepared at any official establishment[5] in accordance with the requirements under this [chapter], but any State or Territory or the District of Columbia may, consistent with the requirements under this [chapter] exercise concurrent jurisdiction with the Secretary over articles required to be inspected under this [chapter] for the purpose of

---

[5]     An "official establishment" is "any establishment determined by the Secretary at which inspection of the slaughter of poultry, or the processing of poultry products, is maintained under the authority of this [chapter]."  (21 U.S.C. § 453(p).)  The parties do not raise any legal issues related to "official establishment."

13

preventing the distribution for human food purposes of any such articles which are adulterated or misbranded and are outside of such an establishment, or, in the case of imported articles which are not at such an establishment, after their entry into the United States."

Foster Farms argues that Leining's complaint against it is preempted under the first clause as imposing a labeling requirement in addition to, or different than, those required under the PPIA. Leining responds that, in challenging the label as misleading, she is not seeking to impose a different requirement than the PPIA, and therefore falls under the second, concurrent jurisdiction, clause.

Foster Farms has the better argument. Because the labels were pre-approved by the FSIS, the federal government has determined that the labels, which include American Humane certification, are not misleading under the PPIA. If Leining were to prevail on her tort claims that the labels were nonetheless misleading, California courts would be imposing an additional requirement to those imposed by the PPIA. Numerous courts addressing similar contentions under the PPIA have reached this conclusion. (*Kuenzig v. Hormel Foods Corp.* (11th Cir. 2013) 505 Fed.Appx. 937, 938 [plaintiffs' claim that defendant misled consumers by listing caloric amounts and fat-free percentages adjacent to each other on lunch meats was preempted as imposing an additional requirement on labels already approved under the PPIA];[6] *Nat'l Broiler Council v. Voss* (9th Cir. 1994) 44 F.3d 740,

---

[6] Federal nonpublished opinions, such as *Kuenzig v. Hormel Foods Corp., supra,* 505 Fed.Appx. at page 938, may be cited by California state courts. (*City of Hawthorne ex rel. Wohlner v.*

14

745-746 [California statute defining when wholesalers can use the word "fresh" on poultry imposes a requirement in addition to the USDA's definition of "fresh" and is therefore preempted]; *Webb v. Trader Joe's Co.* (S.D. Cal. 2019) 418 F.Supp.3d 524, 529, app. pending [plaintiff's claim that defendant's poultry products are mislabeled to the extent they claim "up to 5% retained water" would impose a requirement in addition to the PPIA on pre-approved labels and is therefore preempted]; *La Vigne v. Costco Wholesale Corp.* (S.D.N.Y. 2018) 284 F.Supp.3d 496, 508-511 [plaintiffs' claim that Costco canned chicken is mislabeled because it fails to disclose the proper percentage of broth would impose a requirement in addition to the PPIA-pre-approved label and is therefore preempted]; *Shin v. Campbell Soup Company* (C.D. Cal. 2018) 2018 WL 6164264, *3 [plaintiff's claims that the labels of defendant's chicken soups are misleading when they assert "25% less sodium" or "98% fat free" are preempted because they seek to impose labeling requirements different than those mandated by the PPIA]; *Phelps v. Hormel Foods Corp.* (S.D. Fla. 2017) 244 F.Supp.3d 1312, 1314-1317 [plaintiff's claim that "100% Natural" and "No Preservatives" statements on labels are misleading would impose an additional requirement when the labels had been pre-approved by the FSIS]; *Brower v. Campbell Soup Co.* (S.D. Cal. 2017) 243 F.Supp.3d 1124, 1126-1127 [plaintiff's claim that defendant's soup was misleadingly labeled as "healthy" and indicated it was certified by the American Heart Association without explaining that defendant had paid for that certification was preempted because it sought to impose additional

---

*H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1678, fn. 5; see Cal. Rules of Court, rule 8.1115.)

labeling requirements to a label pre-approved by the FSIS]; *Grocery Mfrs. Ass'n v. Sorrell* (D.Vt. 2015) 102 F.Supp.3d 583, 620 [Vermont statute which prohibits labeling genetically engineered foods as "natural" imposes a different requirement and is therefore preempted to the extent it applies to food subject to the PPIA; related factual issues preclude dismissal]; *Meaunrit v. ConAgra Foods Inc.* (N.D. Cal. 2010) 2010 WL 2867393, *7 [plaintiff's claim that preparation directions on chicken pot pie label are inaccurate is preempted as imposing an additional claim on a label pre-approved by the FSIS]).

Of particular significance is *Arnold v. Kroger* (Ohio App. 2016) 45 N.E.3d 1092, in which the plaintiffs alleged that the defendant's "Simple Truth" brand chicken had labels which falsely and misleadingly claimed the "chicken was 'raised in a humane environment' and/or 'humanely raised.' " (*Id.* at pp. 1092-1093.) The plaintiffs alleged, much as Leining does here, that the labels were misleading, because the chickens were "raised no differently than any other chicken mass produced by its supplier, Perdue." (*Id.* at p. 1093.) The trial court dismissed the plaintiffs' causes of action alleged under state consumer protection laws and common law torts because they were preempted by the PPIA. (*Ibid.*) The plaintiffs appealed, arguing that the FSIS does not "review the meaning of claims regarding the humane treatment of animals." (*Ibid.*) The appellate court affirmed. The FSIS had approved the labels and determined that they were not false or misleading. Therefore, any liability the plaintiffs sought to impose based on their state law claims would in essence attach additional or different terms to the defendant's labeling. (*Id.* at p. 1094.)

Against this overwhelming weight of authority, Leining offers no authority that a labeling claim is ~~was~~ not preempted

16

under the PPIA.  Instead, she argues that her claim falls under the concurrent jurisdiction provision of the PPIA's preemption clause, by citing to cases discussing concurrent jurisdiction under other statutes.[7]  (See, e.g., *Bates v. Dow Agrosciences LLC* (2005) 544 U.S. 431, 434 [the Federal Insecticide, Fungicide, and Rodenticide Act [FIFRA] did not preempt equivalent state labeling laws; only state laws that were "*in addition to or different from*" the federal labeling and packaging rules were preempted]; *Medtronic, Inc. v. Lohr* (1996) 518 U.S. 470 [same test under the Medical Device Amendments of 1976]; *Quesada v. Herb Thyme Farms, Inc., supra,* 62 Cal.4th at pp. 308-310 [the Organic Foods Production Act of 1990 "permits states to adopt more stringent standards governing organic production"].)  Yet these cases recognize that while state law remedies to enforce the federal standards are not preempted, additional labeling requirements are.  "In sum, under our interpretation, [the preemption clause of

---

[7]     The one PPIA case on which she relies is *Association des Eleveurs de Canards et d'Oies du Quebec v. Becerra, supra,* 870 F.3d at page 1143, which held that the PPIA did not preempt a California statute banning the making of foie gras by force-feeding poultry.  Because the California statute addressed the making and sale of foie gras, but not its labeling, PPIA label preemption was not at issue.  In finding the California law was not preempted, the Ninth Circuit held that nothing in the challenged state statute "interferes with the USDA's 'authority to inspect poultry producers for compliance with health and sanitary requirements, require[ ] inspection of poultry after slaughter, *establish[ ] labeling requirements for poultry products*, [or] allow[ ] for withdrawal of inspections for noncompliance and the imposition of civil and criminal penalties for the sale of adulterated products.' [Citation.]"  (*Id.* at p. 1153.)

17

FIFRA] retains a narrow, but still important, role. In the main, it pre-empts competing state labeling standards—imagine 50 different labeling regimes prescribing the color, font size, and wording of warnings—that would create significant inefficiencies for manufacturers. The provision also pre-empts any statutory or common-law rule that would impose a labeling requirement that diverges from those set out in FIFRA and its implementing regulations. It does not, however, pre-empt any state rules that are fully consistent with federal requirements."[8] (*Bates v. Dow Agrosciences LLC, supra,* 544 U.S. at p. 452, fn. omitted.)

Cases interpreting the PPIA have acknowledged the identical distinction. While additional labeling claims are preempted, concurrent jurisdiction permits States to impose additional *remedies* for violations of the PPIA. (E.g., *La Vigne v. Costco Wholesale Corp., supra,* 284 F.Supp.3d at pp. 508-510; *Shin v. Campbell Soup Company, supra,* 2018 WL 6164264 at *4.)

According to its legislative history, one of the key purposes of the PPIA preemption clause "was to ensure national uniformity in labeling." (*Nat'l Broiler Council v. Voss, supra,* 44 F.3d at p. 744.) This purpose would be defeated if states could, via tort law or otherwise, impose additional labeling requirements on

---

[8] That is so because "a state cause of action that seeks to enforce a federal requirement 'does not impose a requirement that is "different from, or in addition to," requirements under federal law. To be sure, the threat of a damages remedy will give manufacturers an additional cause to comply, but the requirements imposed on them under state and federal law do not differ. [The preemption clause] does not preclude States from imposing different or additional *remedies,* but only different or additional *requirements.*' [Citation.]" (*Bates v. Dow Agrosciences LLC, supra,* 544 U.S. at p. 448, bracketed modification ours.)

18

labels already approved under the PPIA. Leining's causes of action against Foster Farms challenge Foster Farms's federally-approved labels and effectively seek to impose additional labeling requirements. Those claims are preempted by the PPIA.

Our conclusion is confirmed by the FSIS's discussion of public comments in the evolution of its Labeling Guideline on Documentation Needed to Substantiate Animal Raising Claims for Label Submission. Animal welfare advocates had specifically requested the FSIS only approve third-party certifications from entities with stricter standards than conventional industry practices. FSIS refused. It concluded that different claims meant different things to different people, and that it would approve a label containing a third-party certification as long as consumers could learn from the third-party's website the standards the certifier used – thereby enabling each consumer to make an informed decision as to whether a particular certification met the consumer's expectations for the language used. Leining's causes of action based on Foster Farms's allegedly misleading use of the word "humane" on its labels would have us impose a particular meaning on "humane" when used on a label, in direct contravention of the FSIS's determination that the meaning of the word should be left to the certifier. (84 FR 71362-71363.)

We conclude the causes of action against Foster Farms are federally preempted.

## 3. *Leining Does Not State a Negligent Misrepresentation Cause of Action Against American Humane*

Leining alleged a single cause of action, for negligent misrepresentation, against American Humane. Although she argued it under the authority of *Hanberry, supra,* 276 Cal.App.2d 680, the parties recognize two potentially applicable theories.

19

"California courts have recognized a cause of action for negligent misrepresentation, i.e., a duty to communicate accurate information, in two circumstances.  The first situation arises where providing false information poses a risk of and results in physical harm to person or property.  The second situation arises where information is conveyed in a commercial setting for a business purpose." (*Friedman v. Merck & Co.* (2003) 107 Cal.App.4th 454, 477 (*Friedman*).)  The first is the *Hanberry* cause of action which Leining initially pursued.  (*Ibid.*)  The second, which we will discuss below, was raised by Leining in letter briefing on appeal, after she conceded *Hanberry* itself does not apply.

> A. *Hanberry Does Not Apply In the Absence of Physical Injury*

*Hanberry* recognized a cause of action against the allegedly negligent certifier of a pair of shoes, after the plaintiff slipped and fell, suffering serious injuries.  (*Hanberry*, *supra,* 276 Cal.App.2d at pp. 682-683.)  Hanberry had alleged that defendant published "a monthly magazine known as Good Housekeeping in which products, including the shoes she purchased, were advertised as meeting the 'Good Housekeeping's Consumers' Guaranty Seal.'  With respect to this seal the magazine stated:  'This is Good Housekeeping's Consumers' Guaranty' and 'We satisfy ourselves that products advertised in Good Housekeeping are good ones and that the advertising claims made for them in our magazine are truthful.' " (*Id.* at p. 682.)  The plaintiff further alleged that, despite the magazine's representation to the contrary, it had made "no examination, test or investigation of the shoes, or a sample thereof, or if such tests were made they were done in a careless and negligent manner and that [the publisher's] issuance of its

20

seal and certification as to the shoes was not warranted by the information it possessed." (*Id.* at p. 683.)  On appeal from the sustaining of the publisher's demurrer, the Court of Appeal concluded this was sufficient to state a cause of action.  (*Ibid.*)

Leining and the trial court in this case focused on *Hanberry*'s language allowing a cause of action when a certifier has conducted no tests, or conducted tests negligently, before certifying the product.  But *Hanberry* arose in a case of physical injury, and relied on a provision of the Restatement Second of Torts, section 311, which was limited to those circumstances.  (*Hanberry, supra,* 276 Cal.App.2d at p. 685, fn. 1.)  That section provides, "One who negligently gives false information to another is subject to liability for *physical harm* caused by action taken by the other in reasonable reliance upon such information . . . ."  (Rest.2d Torts, § 311, italics added.)

Cases subsequent to *Hanberry* have confirmed that this cause of action, based on section 311 of the Restatement, requires physical injury.  (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162-163, 190; *Garcia v. Superior Court* (1990) 50 Cal.3d 728, 734-736.)  Particularly relevant here is *Friedman, supra,* 107 Cal.App.4th 454, decided by a prior panel of this court.  There, plaintiff, a strict vegan, alleged he suffered emotional distress when he discovered a tuberculosis test to which he had submitted contained animal products.  He brought suit against the distributors of the test, who had negligently represented, upon inquiry, that the test did not contain animal products.  (*Id.* at p. 461.)  The panel concluded the *Hanberry* cause of action for negligent misrepresentation was not available, on the basis that it requires physical harm to person or property, and plaintiff alleged only emotional distress.  (*Id.* at pp. 477, 480-481.)

21

Just like the plaintiff in *Friedman*, Leining asserts no physical injury – only the economic harm involved in the increased cost of the chicken she had been led to believe had been humanely raised. The *Hanberry* cause of action is not available to her.

B. *A Cause of Action for Negligent Misrepresentation in a Commercial Setting is Inapplicable to Misrepresentations Made to the General Public, as Was the Case Here*

When we sought additional briefing on the elements of a negligent misrepresentation claim as alleged here, Leining recognized that she had not alleged physical injury, and represented that she was no longer seeking to pursue her negligent misrepresentation cause of action under *Hanberry* and section 311 of the Restatement.

Instead, Leining argues that she can pursue her negligent misrepresentation cause of action under the alternative theory discussed in *Friedman* – "where information is conveyed in a commercial setting for a business purpose." (*Friedman, supra,* 107 Cal.App.4th at p. 477.) This is a cause of action under *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370 (*Bily*) and section 552 of the Restatement.[9]

Unlike the negligent misrepresentation cause of action recognized by *Hanberry* and section 311 of the Restatement, the

---

[9] American Humane argues that Leining has waived this argument because of her failure to raise it before the trial court. Whether Leining can state a cause of action under this theory was fully briefed in response to our request for additional briefing, and can be resolved as an issue of law on undisputed facts. We have discretion to address such issues (*In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 316) and exercise our discretion to do so here.

22

cause of action under *Bily* and section 552 does not require physical injury.  Perhaps for this reason, its contours are narrower in other respects.  (See Rest.2d Torts, § 311, com. a.)  Section 552 provides, in pertinent part, that "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

Although facially the statement might appear to govern Leining's claims, the section comes with an important limitation.  It is restricted to a loss suffered "by the person or a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it." (Rest.2d Torts, 552(2)(a).)  When the California Supreme Court adopted the Restatement rule in *Bily,* it was careful to restrict the class of potential plaintiffs to "those to whom or for whom the representations were made."[10]  (*Bily, supra,* 3 Cal.4th at p. 408

---

[10]    Liability for negligence for purely economic losses is " 'the exception, not the rule,' " in California.  (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 400, 403 [holding that purely economic business losses sustained as a result of a natural gas leak were not recoverable in part because of "concerns about limitless liability and unending litigation"].)  The primary exception is where the plaintiff and defendant have a special relationship.  (*Ibid.*)  The *Bily* rule is an application of this principle to the tort of negligent misrepresentation.  (*Id.* at pp. 401-402.)

23

[independent auditor may be liable to persons who rely on an audit in a transaction which the auditor intended to influence].) *Bily* favorably described the Restatement rule as one that "attempts to define a narrow and circumscribed class of persons to whom or for whom representations are made. In this way, it recognizes commercial realities by avoiding both unlimited and uncertain liability for economic losses in cases of professional mistake and exoneration of the auditor in situations where it clearly intended to undertake the responsibility of influencing particular business transactions involving third persons. The Restatement rule thus appears to be a sensible and moderate approach to the potential consequences of imposing unlimited negligence liability which we have identified."[11] (*Ibid.*)

Even assuming that Leining can satisfy the other elements of this cause of action for professional negligence in business advice, she cannot establish that she is a member of a "limited group of persons for whose benefit and guidance" (Rest.2d Torts, 552(2)(a)) American Humane supplied its certification. Put simply, American Humane anticipated Foster Farms would place its certification on all of its chicken products in California, to influence any potential chicken-buyers in the general public. That is the opposite of a limited group of persons.

This distinction is illustrated by a pair of cases against investment ratings agencies. In the first, the plaintiff investors sued rating agencies for over-rating bonds which had since become worthless. The ratings had been made available to the general

---

[11] Indeed, the *Bily* court cautioned that it did not necessarily endorse any other provisions of section 552 of Restatement beyond its narrow description of the potential plaintiffs. (*Bily, supra,* 3 Cal.4th at p. 414.)

public and any person could have invested in the bonds plaintiffs purchased. (*Grassi v. Moody's Investor's Services* (E.D. Cal. 2011) 2011 WL 3439184, *13, recommendations adopted (E.D. Cal. 2011) 2011 WL 13371091, aff'd (9th Cir. 2013) 540 Fed.Appx.737 (*Grassi*).) The district court concluded the plaintiffs could not prevail under California law, as they could not establish membership in a limited group of intended beneficiaries. (*Ibid.*) In the second case, the plaintiff investor sued the rating agencies for giving unjustified favorable credit ratings to structured investment vehicles that subsequently collapsed. The structured investment vehicles could not be sold to the general public, but only through private placements to two limited categories of investors (qualified institutional investors and qualified purchasers), which included the plaintiff. (*Public Employees' Retirement System v. Moody's Investors Service, Inc.* (2014) 226 Cal.App.4th 643, 653.) The Court of Appeal concluded that the plaintiff investor could establish that the ratings agencies supplied their ratings "with knowledge of the existence of a well-defined type of transaction which the ratings were intended to influence." (*Id.* at p. 669.)

Other cases agree that recommendations made to the general public are not actionable. (See *Amann v. Clear Channel Communications Inc.* (Ohio App. 2006) 846 N.E.2d 95, 100-101 [misrepresentations about an investment in ads broadcast to a radio station's general audience are not actionable]; *Ginsburg v. Agora, Inc.* (D. Md. 1995) 915 F.Supp. 733, 739 [misrepresentations about an investment in a general circulation newsletter are not actionable]; *In re Delmarva Sec. Litigation* (D. Del. 1992) 794 F.Supp.1293, 1310 [misrepresentations about an

investment in documents released to the public at large are not actionable].)

Leining attempts to manufacture a narrow segment of the public as the target of American Humane's certification by claiming it intended to guide "customers who, like Ms. Leining, care about animal welfare when purchasing retail goods." The plaintiffs in *Grassi* made an analogous attempt, arguing that the ratings agencies had directed their ratings toward "a specific and limited class of investors consisting of those investors looking for safe investment grade corporate bonds issued from investment banks not likely to fail . . . ." (*Grassi, supra,* 2011 WL 3439184, at p. *3.) The district court rejected this attempt, concluding the challenged bond ratings were not limited in distribution but "available to the general public," and any person could invest in the bonds. (*Id.* at p. *13.) The same is true here. American Humane's certification was made available by Foster Farms to the general public, and anyone could purchase Foster Farms's chicken. If a cause of action under *Bily* could be stated against American Humane for certifying chicken Leining purchased in a standard grocery-buying transaction, *Bily* would swallow *Hanberry* whole, rendering the latter's limitation to physical injury meaningless.

## DISPOSITION

The judgment is affirmed. Foster Farms and American Humane shall recover their costs on appeal.


RUBIN, P. J.

WE CONCUR:


BAKER, J.                                          KIM, J.


26